GEORGIE S. CARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 95259. Filed November 15, 1963.

*Sam G. Winstead* and *Larry L. Bean,* for the petitioner.
*Harold D. Rogers,* for the respondent.

**OPINION**

The tax treatment to be accorded distributions in redemption of stock made after December 31, 1954, is controlled by section 302 of the Internal Revenue Code of 1954. That section provides that such distributions are to be treated as in part or full payment in exchange for the stock redeemed where the redemption, pursuant to which the distribution was made, qualifies as an exchange under paragraphs (1), (2), (3), or (4) of section 302(b). It is petitioner's position that the redemption of December 13, 1957, does so qualify under the provisions of paragraph (3) of section 302(b).

Section 302(b)(3) permits exchange treatment of a redemption which is made "in complete redemption of all of the stock of a corporation owned by the shareholder." Moreover, while the constructive ownership provisions of section 318(a) are made expressly applicable to determinations of stock ownership for the purposes of section 302, an exception to this rule is provided in cases of section 302(b)(3) redemptions by section 302(c)(2)(A). That section states that:

(A) In the case of a distribution described in * * * [sec. 302(b)(3)], section 318(a)(1) [which for purposes pertinent to the instant case would attribute the ownership of stock, owned by taxpayer's children, to the taxpayer] shall not apply if—

(i) immediately after the distribution the distributee has no interest in the corporation (including an interest as officer, director, or employee), other than an interest as a creditor,

(ii) the distributee does not acquire any such interest (other than stock acquired by bequest or inheritance) within 10 years from the date of such distribution, and

(iii) the distributee, at such time and in such manner as the Secretary or his delegate by regulations prescribes, files an agreement to notify the Secretary or his delegate of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.

If the distributee acquires such an interest in the corporation (other than by bequest or inheritance) within 10 years from the date of the distribution, then the periods of limitation provided in sections 6501 and 6502 on the making of an assessment and the collection by levy or a proceeding in court shall, with respect to any deficiency (including interest and additions to the tax) resulting from such acquisition, include one year immediately following the date on which the distributee (in accordance with regulations prescribed by the Secretary or his delegate) notifies the Secretary or his delegate of such acquisition;

and such assessment and collection may be made notwithstanding any provision of law or rule of law which otherwise would prevent such assessment and collection.

The regulation referred to in section 302(c)(2)(A)(iii) is section 1.302-4(a):

The agreement specified in section 302(c)(2)(A)(iii) shall be in the form of a separate statement in duplicate signed by the distributee and attached to his return timely filed for the year in which the distribution described in section 302(b)(3) occurs. The agreement shall recite that the distributee has not acquired any interest in the corporation * * * since such distribution, and that he agrees to notify the district director of internal revenue * * * of any acquisition of such an interest in the corporation within 30 days after such acquisition if such acquisition occurs within 10 years from the date of such distribution.

Immediately after the December 13, 1957, redemption by which the 145 shares of Medical stock owned by petitioner were redeemed, her son, E. H. Cary, Jr., continued to own the remaining 5 outstanding shares of stock in that corporation. Unless the application of the constructive ownership rules of section 318(a)(1) is barred by section 302(c)(2)(A), *supra*, it is clear that the redemption of December 13 does not qualify as a complete termination of petitioner's interest in the redeeming corporation within the meaning of section 302(b)(3).

Petitioner did not file the agreement contemplated by section 302(c)(2)(A)(iii) with her return for 1957. She did, however, report on that return the redemption of her stock by Medical as a sale which resulted in no gain or loss since her basis for the stock sold was equal to the amount received by her from the sale. When in 1959, during an audit of her 1957 return, petitioner's failure to file the agreement was brought to her attention, she promptly filed an amended return for 1957 attaching that agreement. It is respondent's position that petitioner's failure to file the section 302(c)(2)(A)(iii) agreement *in the manner prescribed by section 1.302-4(a), Income Tax Regs.*, precludes her use of the exemption provided by section 302(c)(2). Petitioner contends that the *statute* requires only *substantial*, rather than strict, compliance, and that substantial compliance was effected.

We agree with petitioner. The *essence* of section 302(c)(2) taken in conjunction with section 302(b)(3) is to allow exchange treatment to redemptions which result in the complete cessation of a shareholder's interest in a corporation for a period of 10 years. In this connection, we observe that section 302, as *orginally* enacted by the House, provided that the rules of family attribution (now section 318(a)(1)) would not be applicable to redemptions in complete termination of a shareholder's interest if only *two* conditions were met, viz, that "immediately [after the redemption] * * * the distributee

has no interest in the corporation * * * and * * * such distributee does not acquire any such interest in [the] corporation within 10 years from the date of the distribution in redemption." [1] We further note that the *House* version of the statute exacted *no* requirement that an agreement be filed with the Secretary or his delegate before "complete termination" redemptions would qualify for exemption from the family attribution rules.

The *Senate* version of section 302 retained the two *essential* requirements for the exemption of redemptions in complete termination from the family attribution rules, and added a third provision, relating to the filing of an agreement, with this explanation:

Moreover, in order to qualify for nonattribution between members of a family, sub-paragraph (A)(iii) [of section 302(c)(2)] requires that the distributee, under regulations prescribed by the Secretary or his delegate, file an agreement to notify the Secretary or his delegate of any acquisition of any interest (other than by bequest or inheritance) within the 10 year period and to retain such records as the Secretary or his delegate may prescribe as necessary for the application of paragraph (2) [of section 302(c)]. *Thus, your committee anticipates that the Secretary or his delegate may require that the distributee retain personal income tax returns and other records indicating fully the amount of tax which would have been payable had the redemption not been treated as a distribution in full payment for his stock.*[2] [Emphasis supplied.]

It would thus appear that a *primary* purpose for the addition of section 302(c)(2)(A)(iii) to the House version of section 302 was so that records, "indicating fully the amount of tax which would have been payable had the redemption not been treated as a distribution in full payment for his stock," could be required of distributees by the Commissioner of Internal Revenue.

As we have hereinbefore noted, what is essential with respect to sections 302(b)(3) and (c)(2) is that the redemption result in the complete cessation of the shareholder's interest in the corporation, and, that such cessation extend for a period of 10 years. The requirement that the distributee agree to retain records of the redemption does not relate to the substance of the transaction, but, on the contrary, relates merely to procedural detail. Such a requirement can, in our view, be satisfied by substantial compliance with its provisions. Respondent, however, contends that such a view would be prejudicial to him.

Relying on the case of *Archbold* v. *United States*, 201 F. Supp. 329 (D.N.J. 1962), affirmed per curiam 311 F. 2d 228 (C.A. 3, 1963), respondent argues that section 302(c)(2)(A)(iii) was designed principally to protect the Government from any attempt on the part of a

---

[1] H. Rept. No. 1337, 83d Cong., 2d Sess., p. A75 (1954).
[2] S. Rept. No. 1622, 83d Cong., 2d Sess., p. 236 (1954).

taxpayer to terminate his interest in a corporation for the 3-year period of limitations provided by section 6501 and *then* reacquire this interest after having taken advantage of the favored capital gains treatment afforded by section 302(b)(3). *Archbold*, in denying a taxpayer-distributee's request to file a section 302(c)(2)(A)(iii) agreement 2 years after the return was filed, reasoned that if the agreement was not required to be timely filed (i.e., with the original return), a situation would be created where a distributee could reacquire the stock after the running of the 3-year statute of limitations with impunity, while should his return be audited *within* 3 years of the year of distribution, he need only file the agreement to retain his section 302(b)(3) treatment. With this reasoning we respectfully disagree.

Looking once again to the legislative history of section 302, we find that, as originally enacted by the House, that section provided:

that in any case in which the [section 302(b)(3)] distributee acquires an interest in [the redeeming] corporation in less than 10 years from the date of such distribution [in complete redemption], the amount of tax attributable to the inclusion in income pursuant to section 301 of the amount of such distribution *shall be assessed and collected notwithstanding any statutes of limitation or other rule of law.*[3] [Emphasis supplied.]

However, consistent with the theory that some statute of repose is necessary in order to insure the taxpayer, who has made an honest return, that after such period his tax liability will not be reopened, see *Mabel Elevator Co.*, 2 B.T.A. 517, 519 (1925), the Senate amended section 302 to provide that:

In the event that the [section 302(b)(3)] distributee acquires an interest in the corporation * * * within the 10 years from the date of distribution, *then the period of limitation provided in sections 6501 and 6502 * * * shall*, with respect to any deficiency * * * resulting from such acquisition, *include 1 year following the date the distributee*, in accordance with regulations, *notifies the Secretary or his delegate* [of such acquisition].[4] [Emphasis supplied.]

Thus, as originally written, section 302 contained *no* statute of limitations on the assessment and collection of deficiencies which resulted from reacquisitions within the 10-year period. The Senate amendment modified the House version by providing that, in the case of reacquisitions, the Government would have, in addition to the periods already provided by sections 6501 and 6502, "1 year following the date the distributee * * * *notifies* the Secretary or his delegate" of such acquisition to make assessment or collection of any deficiencies in tax arising as a result of said acquisition. Since the additional 1-year statute does not *begin* to run until *after* notification by the distributee

---

[3] H. Rept. No. 1337, 83d Cong., 2d Sess., p. A75–76 (1954).
[4] S. Rept. No. 1622, 83d Cong., 2d Sess., p. 236 (1954).

of reacquisition, the Government is fully protected even where the section 302(c)(2)(A)(iii) agreement is not filed.

This same result was reached by the District Court in the recent case of *Van Keppel* v. *United States*, 206 F. Supp. 42 (D. Kan. 1962), affd. 321 F. 2d 717 (C.A. 10, 1963). The facts of the *Van Keppel* case are, for all practical purposes, indistinguishable from those in the instant case.[5] There, as here, the Government contended for the application of the *Archbold* rationale. This approach was rejected by the District Court, which stated:

I disagree with * * * [*Archbold*] because in my opinion the three year statute does not bar recovery of additional taxes upon reacquisition of stock within ten years. * * * Section 302(c)(2) provides for the assessment of tax deficiencies within one year after notice of reacquisition is given. The statute does not say the one-year statute of limitation is applicable only if an agreement is filed. It says the one-year statute of limitation applies if the taxpayer reaquires an interest within ten years.

\* \* \* \* \* \* \*

If the statute of limitation extends to one year after notice, regardless of a filed agreement, both the taxpayer and the Government are fully protected. Obviously, a filed agreement would make it easier for the Director to detect reacquisitions; but detection is not the essence of section 302(c)(2), since the taxpayer must notify the Director in order to set the one year statute of limitations in motion.

In affirming *Van Keppel* we note that the Tenth Circuit chose to distinguish, rather than disagree with, the Third Circuit's affirmance of *Archbold*.[6] The Tenth Circuit found that:

Nothing in the statutes or regulations precludes the Director from accepting an agreement filed after the prescribed period. Established administrative practice has long recognized and accepted amended returns filed after the due date "for the purpose of correcting clear errors or plain mistakes inhering in original returns." [Citing authorities.]

\* \* \* \* \* \* \*

The Director did not reject the agreement or the amended return. Unless the assessment of the deficiency may be considered a rejection, the Government has never disclaimed the agreement and the taxpayers are bound by it. The situ-

---

[5] In *Van Keppel*, a husband owned 1,124, and a wife owned 375, of the 2,000 authorized shares of stock in a corporation. In 1956 the corporation redeemed all of the wife's shares of stock. This transaction was reported in 1956 by the taxpayers as a sale of the wife's stock resulting in capital gain. The taxpayers' 1956 joint return was prepared by a CPA in consultation with the taxpayers' lawyer. "Through the inadvertence of someone, no [sec. 302(c)(2)(A)(iii)] agreement was attached to the [1956] return." In 1958, during an audit of the 1956 return, it was discovered that no agreement had been filed. The taxpayers promptly submitted an agreement to the district director and he did not reject it. They then filed an amended return for 1956 to which a copy of the agreement was attached. Receipt of this return was duly acknowledged by the district director. Thereafter, the Commissioner of Internal Revenue determined that the proceeds of the 1956 redemption were taxable as a dividend and a deficiency for 1956 was accordingly assessed.
[6] See *United States* v. *Van Keppel*, 321 F. 2d 717, 720 (C.A. 10, 1963), footnote 9.

ation is different from that presented in *Archbold* v. *United States* [citation]. That case did not consider a claim of mistake. [In *Archbold*,] *after* the Director had made a deficiency assessment on the basis that a redemption was ordinary income, the taxpayers offered to file an amended return appending the required agreement. Here the failure of the taxpayers to file the agreement was a mistake, the submission of the agreement preceded the assessment, and the record does not disclose any rejection of the agreement other than the deficiency assessment. * * * Acceptance of the late filing was discretionary. Fairness to the taxpayers requires that the discretion be exercised for their benefit and failure to do so was an abuse of discretion. [Emphasis supplied.]

While, as stated earlier, we disagree with the substantive rationale of the *Archbold* case, it is to be noted that all of the factors used by the Tenth Circuit to distinguish *Van Keppel* from *Archbold* are present here. Petitioner is a widow, who was 73 years of age at the time of the December 13, 1957, redemption of her Medical stock. Her return for the year 1957 was prepared by competent certified public accountants, familiar with her financial affairs, in consultation with her attorneys. On her 1957 return the redemption was reported as a sale of stock. Through the inadvertence of someone, no section 302(c)(2)(A)(iii) agreement was attached to the return. When petitioner's 1957 return was audited in 1959 and the absence of the agreement was made known to her, she promptly filed an amended 1957 return attaching the agreement. The district director duly acknowledged receipt of this amended return and agreement on August 3, 1959. Since that time he has neither rejected the return nor, quite obviously, has there ever been an assessment of the alleged deficiency. These being the relevant facts, if *Archbold* is distinguishable from *Van Keppel*, then it is also distinguishable for the same reasons from the instant case.

It is our decision that the provisions of section 302(c)(2)(A)(iii), requiring the filing of an agreement to notify the Secretary or his delegate of reacquisitions of stock within a 10-year period of a section 302(b)(3) redemption in the manner prescribed by regulation, are directory rather than mandatory. It appearing that petitioner's failure to file the agreement was through inadvertence, that she forthwith filed it upon learning of the defect, that in the interim she acquired no interest in Medical Arts Hospital, and that she maintained appropriate records relating to the transaction, we hold that she substantially complied with the statute.

This disposition of the case makes it unnecessary for us to consider other issues raised by the parties.

Reviewed by the Court.

*Decision will be entered for the petitioner.*