NATIONAL WESTERN LIFE INSURANCE COMPANY (SUCCESSOR TO HEART OF AMERICA LIFE INSURANCE COMPANY), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3937–64, 2458–67.   Filed January 15, 1970.

*Edward G. Hearn*, for the petitioner.
*Charles M. Costenbader*, for the respondent.

### OPINION

FORRESTER, *Judge :* In these consolidated cases respondent has determined deficiencies in petitioner's income taxes as follows :

| Docket No. | | TYE Dec. 31— | Deficiency |
|---|---|---|---|
| 3937–64 | { | 1958 | $82, 852. 09 |
| | | 1959 | 59, 791. 50 |
| | | 1960 | 58, 451. 47 |
| 2458–67 | { | 1961 | 110, 818. 25 |
| | | 1962 | 57, 288. 27 |
| | | 1963 | 64, 036. 60 |

Several issues have been resolved by stipulation and concessions so that the only issue now remaining is whether for the year 1959 through 1964 [1] petitioner may elect under section 818(c)(2) [2] to revalue its preliminary term basis life insurance reserves when such attempted elections were made in amended income tax returns filed after the dates on which original income tax returns were due to be filed.

All of the facts herein are stipulated and are so found. Said stipulation and exhibits attached thereto are incorporated herein by this reference.

National Western Life Insurance Co. (hereinafter sometimes referred to as National) is successor to Heart of America Life Insurance Co., formerly the National Bellas Hess Life Insurance Co. (hereinafter sometimes referred to as Heart). Heart, a Missouri corporation, merged into National, a Colorado corporation, on April 27, 1967. Under applicable law, National is primarily liable for all the liabilities of Heart, including all the Federal income tax liabilities of Heart for the taxable years in issue.

Petitioner, as used herein, shall refer to Heart, National's predecessor in interest. Petitioner was, at all times relevant hereto, a corporation duly organized and existing under the laws of the State of Missouri, with it principal offices at North Kansas City, Mo. Its principal business was the issuance of life, and accident and health, insurance policies. Petitioner (pursuant to extensions granted) duly filed its Federal income tax returns for the taxable years 1958, 1959, 1960, 1961, 1962, 1963, and 1964, with the district director of internal revenue, Kansas City, Mo., on December 2, 1959, May 13, 1960, June 12, 1961, July 12, 1962, July 2, 1963, July 27, 1964, and September 15, 1965, respectively.

During all such years petitioner was a life insurance company within the meaning of section 801(a).

Petitioner computed its life insurance reserves on a preliminary term basis and in its original income tax returns mentioned above did not elect to revalue its life insurance reserves on a net level basis as was permitted under section 818(c)(1) or (2).

Respondent, by statutory notice dated May 28, 1964, determined deficiencies in petitioner's income taxes for the calendar years 1958, 1959, and 1960. Petitioner, on August 11, 1964, filed a petition in this Court seeking a redetermination of such deficiences. Thereafter, on December 27, 1965, petitioner filed amended Federal income tax returns for the taxable years 1958 through 1964 with the district director of internal revenue, Kansas City, Mo., wherein it revalued all its life

---

[1] 1964 is involved for carryback purposes only.

[2] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

insurance reserves for the taxable years 1959 to 1964, inclusive, using the approximate revaluation method provided for in section 818(c)(2). On that same date, petitioner also filed motions in docket No. 3937–64 (years 1958, 1959, and 1960) for leave to file an amendment to its petition and for a continuance; both motions were granted. As relevant herein the motion for continuance alleged, in part, that petitioner had sustained a loss for the taxable year ended December 31, 1961; that said loss was allowable as an operations loss deduction for any or all of the years 1958 through 1960; and further that because petitioner's 1961 income tax return had not been audited, a continuance should be granted so that this Court could determine the correct tax liability for 1958, 1959, and 1960.

Respondent examined petitioner's amended income tax returns for 1961 through 1964 and as a result issued a statutory notice of deficiency on February 24, 1967, determining deficiencies for the years 1961 through 1963. An operations loss deduction was determined for 1964 which was carried back and absorbed in 1961.

On May 23, 1967, petitioner filed a petition herein covering the years 1961, 1962, and 1963, which was assigned docket No. 2458–67.

As a result of mutual stipulations and concessions the only issue remaining before us is whether for the years 1959 through 1964 petitioner may elect under section 818(c)(2) to revalue its life insurance reserves, which were originally computed on a preliminary term basis, when the election was made in amended income tax returns filed after the dates on which the original income tax returns were due to be, and were filed.

Between 1921 and 1959 life insurance companies were taxed only on a portion of their net investment income. During this period different formulas were utilized in determining this portion. These formulas were not satisfactory and in 1959 Congress, in an attempt to provide a more adequate and permanent system, enacted the Life Insurance Company Income Tax Act of 1959. See H. Rept. No. 34, 86th Cong., 1st Sess. (1959), 1959–2 C.B. 736.

The 1959 Act, as amended, provides in subchapter L, part I, secs. 801 *et seq.*, for the imposition of a tax (sec. 802) on the life insurance company taxable income of every life insurance company. As contrasted with earlier acts the 1959 Act differs in that life insurance company taxable income consists of three separate parts which are generally referred to as phases. These phases are: (1) Taxable investment income; (2) gain from operations; and (3) the remaining gains from underwriting to the extent distributed to shareholders. The scheme of the Act is tremendously complex, but for purposes of the instant case the only relevant factor is that use of the preliminary term method of computation of reserves results in a lower reserve and a greater tax,

while use of the net level premium basis under the approximate revaluation contended for by petitioner results in a higher reserve and a lesser tax.

The issue before us is whether, for the years 1959 through 1964, the petitioner may elect, under section 818(c)(2), to revalue its life insurance reserves which were originally computed on a preliminary term basis, when the attempted election was not made until after the dates, as extended, on which original income tax returns were due to be, and were filed.

When the Life Insurance Company Income Tax Act of 1959 was written, Congress recognized that life insurance companies computing their reserves on a preliminary term basis, as contrasted with companies computing their reserves on a net level basis, would suffer a hardship. S. Rept. No. 291, 86th Cong., 1st Sess., p. 31 (1959) ; H. Rept. No. 34, 86th Cong., 1st Sess., p. 18 (1959). To avoid this result Congress enacted section 818(c),[3] which provides a choice of two alternative methods by which insurance companies computing their reserves on a preliminary term basis may revalue such reserves. The first of these, known as the exact revaluation method, provides for a revaluation as though the reserves had been originally computed on the net level premium basis. The second alternative, known as the approximate revaluation method, provides for the use of a formula to be applied to the amount of reserves originally computed.

As pertinent herein, a valid election under section 818 (c) (2) would directly affect and reduce petitioners income tax liability for the years in issue.

Petitioner argues on brief that a valid election under section

---

[3] Relevant portions are as follows :
SEC. 818. ACCOUNTING PROVISIONS.
(c) LIFE INSURANCE RESERVES COMPUTED ON PRELIMINARY TERM BASIS.—For purposes of this part (other than section 801), at the election of the taxpayer the amount taken into account as life insurance reserves with respect to contracts for which such reserves are computed on a preliminary term basis may be determined on either of the following basis:
(1) EXACT REVALUATION.—As if the reserves for all such contracts had been computed on a net level premium basis (using the same mortality assumptions and interest rates for both the preliminary term basis and the net level premium basis).
(2) APPROXIMATE REVALUATION.—The amount computed without regard to this subsection—
(A) increased by $21 per $1,000 of insurance in force (other than term insurance) under such contracts, (less 2.1 percent of reserves under such contracts, and
(B) increased by $5 per $1,000 of term insurance in force under such contracts which at the time of issuance cover a period of more than 15 years, less 0.5 percent of reserves under such contracts.
If the taxpayer makes an election under either paragraph (1) or (2) for any taxable year, the basis adopted shall be adhered to in making the computations under this part (other than section 801) for the taxable year and all subsequent taxable years unless a change in the basis of computing such reserves is approved by the Secretary or his delegate, except that if, pursuant to an election made for a taxable year beginning in 1958, the basis adopted is the basis provided in paragraph (2), the taxpayer may adopt the basis provided by paragraph (1) for its first taxable year beginning after 1958.

818(c)(2) may be made by an amended return because respondent's regulation is merely directory, and not mandatory. In support of its contention, petitioner directs our attention to numerous cases dealing with required notices and elections under sections 302(c)(2)(A)(iii) (stock redemptions) and 453 (installment sales). We have examined these cases and find that they are all inapposite. Specifically we observe that under section 302(c)(2)(A)(iii) petitioner relies on *Georgie S. Cary*, 41 T.C. 214 (1963); and under section 453 petitioner relies on *John F. Bayley*, 35 T.C. 288 (1960); *Jack Farber*, 36 T.C. 1142 (1961), affd. 312 F. 2d 729 (1963), certiorari denied 374 U.S. 828 (1963); *John P. Reaver*, 42 T.C. 72 (1964); and *F. E. McGillick Co.*, 42 T.C. 1059 (1964).

In *Bayley*, *Farber*, *Reaver*, and *McGillick*, neither the statute nor the regulations specifically provided for the time or method of making an election. In the instant case, although both the committee reports and the statute are silent as to the time or manner of making an election, respondent's regulations are not. Respondent's regulations, sec. 1.818–4(e), Income Tax Regs., provide:

(e) Time and manner of making election. The election provided by section 818(c) shall be made in a statement attached to the life insurance company's income tax return for the first taxable year for which the company desires the election to apply. The return and statement must be filed not later than the date prescribed by law (including extensions thereof) for filing the return for such taxable year. However, if the last day prescribed by law (including extensions thereof) for filing a return for the first taxable year for which the company desires the election to apply falls before April 4, 1961, the election provided by section 818(c) may be made for such year by filing the statement and an amended return for such taxable year (and all subsequent taxable years for which returns have been filed) before July 4, 1961. The statement shall indicate whether the exact or the approximate method of revaluation has been adopted. The statement shall also set forth sufficient information as to mortality and morbidity assumptions; interest rates; the valuation method used; the amount of the reserves and the amount and type of insurance in force under all contracts for which reserves are computed on a preliminary term basis; and such other pertinent data as will enable the Commissioner to determine the correctness of the application of the revaluation method adopted and the accuracy of the computations involved in revaluing the reserves. The election to use either the exact revaluation method or the approximate revaluation method shall, except for the purposes of section 801, be adhered to in making the computations under part I for the taxable year for which such election is made for all subsequent taxable years.

More important, however, we note that in *Bayley* and *Reaver*, we stated that "an election normally implies a choice between two or more alternatives" and therefore, on the facts contained in both *Bayley* and *Reaver*, we held that the petitioners' initial treatment of the gain from the sale of realty was not inconsistent with their subsequent election to report the gain on the installment basis as provided in section

453. Similarly, the same rationale was applied in *McGillick*, *Farber*, and in *Cary*. In *McGillick*, we held that the corporate petitioner could report the gain on the sale of its real estate on the installment method in an original return which had been filed late because petitioner had erroneously believed itself tax exempt. In *Farber*, we held that the taxpayer could validly elect to report the gain from the sale of stock on the installment method because his treatment of the sale on his return for the first year in issue was consistent with his treatment of the transaction on his returns for the later years. In *Cary* we held that the attribution provisions of section 318 were not applicable to a redemption of corporate stock, even though petitioner did not attach to her original 1957 return the agreement provided for by section 302(c)(2)(A)(iii) and the regulations thereunder. Our decision in *Cary* was grounded on our holding that the provisions of section 302(c)(2)(A)(iii) were directory; that petitioner's failure to comply was due to inadvertence; and that she cured it promptly by filing an amended return and attaching the required agreement. We also noted that petitioner had reported the redemption on her original 1957 income tax return and had not thereafter acquired any interest in the corporation. We concluded that there had been substantial compliance with the statute.

The factor which is common in all of the above cases is that the original action (or the failure to act) on the part of the taxpayer did not amount to an election against, and was not inconsistent with the position which the taxpayer ultimately did adopt. This is in contrast to the fact that petitioner's actions in the instant case were inconsistent with its later attempted election.

Petitioner had a choice to revalue its reserves or to leave them on the preliminary term basis, which choice it exercised when it filed its original returns. We believe that the situation thus presented is squarely within the rule annunciated in *Pacific National Co.* v. *Welch*, 304 U.S. 191, 193–195:

The question is whether, having filed a return according to the deferred payment method, the taxpayer by filing claim for refund is entitled to have the profit from the sales computed on the installment method.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Conceding that its return might have been made in accordance with either method, petitioner says that, being ignorant of both, it treated the sales as if made for cash at figures mentioned in the contracts. \* \* \*

The parties agree that, if allowed to change to the installment method, petitioner would be entitled to a refund in some amount. But that fact has no tendency to discredit the deferred payment method as inapplicable. The amount of the tax for the year in question is only one of many considerations that may be taken into account by the taxpayer when deciding which method to employ. The one that will produce a higher tax may be preferable because of probably effect

on amount of taxes in later years. In case of overstatement and overpayment, the taxpayer may obtain refund calculated according to the method on which the return was made. *Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns (§ 53(a)) to include the period allowed for recovering overpayments (§ 322(b)).* There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method. By reporting income from the sales in question according to the deferred payment method, petitioner made an election that is binding upon it and the commissioner.* [Footnote omitted. Emphasis supplied.]

Petitioner, on brief, states that in its original returns it erroneously believed that no tax was due and therefore no election was made because it—

would have been foolish to claim a tax election when the only possible result could be an increase to an operations loss carryover, which insurance industry statistics indicate would probably expire unutilized. Well-advised companies would wait until such time as they could reasonably anticipate some tax benefit from the relief provision provided by Congress through the medium of the Section 818(c) election.

Thus, petitioner argues that because of the changed circumstances it should now be permitted to elect under section 818(c). We do not agree. Section 818(c) provides for one election. The election is not conditional. If the petitioner elects, or elects not to elect, on the basis of erroneous judgment, information, or calculations, the election is no less viable. The proposition proposed by petitioner's argument is very similar to one we rejected in *Samuel Pollack*, 47 T.C. 92, 111 *et seq.* (affirmed on another issue 392 F. 2d 409 (C.A. 5, 1968)), in the following language (pp. 112–113):

After it appeared that the Shelborne loss might not be deductible by reason of the corporation's failure to qualify as a small business corporation, the Millers attempted to reverse their election to report the gain on sale of the unimproved land in full in 1959 and they now seek to have that gain taxed on the installment method. We hold that petitioners are bound by the election made on their original 1959 return.

Although petitioners would have been entitled to utilize the installment method of reporting, they elected otherwise, and their attempt to take advantage of that method now comes too late. They may not undo what they have done. *Pacific National Co.* v. *Welch*, 304 U.S. 191; *United States* v. *Kaplan*, 304 U.S. 195.

This case is unlike the situations and decisions dealt with in Rev. Rul. 65–297, 1965–2 C.B. 152 (see also T.I.R. 756, Aug. 24, 1965), where there was a failure to make *any* election in the original return: [16] nor is it like the situation where the election that taxpayer attempted to make was not open to him. Cf. *Mamula* v. *Commissioner*, 346 F. 2d 1016 (C.A. 9), reversing 41 T.C. 572. Here, petitioners did make an available election on their original return. They could have selected either the installment method or the method that they actually used. Having

thus made that election they may not now reverse such action. * * * [Footnote omitted.]

See also *Albert Vischia*, 26 T.C. 1027.

On brief petitioner suggests that section 1.818–4(e), Income Tax Regs., may be an unwarranted extension of the statute and therefore invalid. We disagree. In the administration of the tax laws the role of the judiciary is to assure that respondent's regulations "implement the congressional mandate in some reasonable manner." *United States* v. *Correll*, 389 U.S. 299, 307 (1967). Therefore, unless respondent's regulations are "unreasonable and plainly inconsistent with the revenue statutes" they must be sustained. *Bingler* v. *Johnson*, 394 U.S. 741 (decided Apr. 23, 1969).

Although neither the committee reports nor the statute itself speak as to the time or manner in which the election is to be effectuated, respondent is not required to grope blindly in administering the revenue act.[4] Cognizant of this fact Congress has given to the Secretary or his delegate the authority to prescribe all needful rules and regulations (sec. 7805). In our view the requirement of the regulation that the election be made not later than the due date for filing the return is a needful rule for the administration and enforcement of this complex statute; is not inconsistent with congressional intent; and is entirely reasonable, especially in view of the fact that the regulation provides a grace period as to all elections otherwise due before April 4, 1961. In the instant case, petitioner could have elected by filing amended returns for 1959 and 1960 at any time before July 4, 1961. It seems to us that this gave petitioner (and similarly situated life insurance companies) ample time to make calculations and to exercise judgments as to the election.

In order to reflect the concessions of the parties,

*Decision will be entered under Rule 50.*

---

[4] See the emphasized language in *Pacific National Co.* v. *Welch*, quoted *supra*.