122 T.C. No. 5

UNITED STATES TAX COURT

ESTATE OF JOHN W. CLAUSE, DECEASED, THOMAS Y. CLAUSE, PERSONAL
REPRESENTATIVE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12995-01.                Filed February 9, 2004.


        P, prior to his death, sold all of his shares in C to
C's employee stock ownership plan in 1996.  P purchased
qualified replacement property with most of the proceeds
from the sale within a year of the sale.  P's 1996 original
Federal tax return was filed timely (i.e., on or before Apr.
15, 1997) and did not report the transaction.  On Nov. 28,
2000, after R began examining P's original tax return for
1996, P filed an amended Federal tax return for 1996
indicating to R that certain proceeds from the sale had been
reinvested in qualified replacement property.  On Oct. 17,
2001, R received a second Federal tax return for 1996 from P
that attached certain statements of election pursuant to
I.R.C. sec. 1042 regarding the sale in 1996.

        Held: P is not able to defer recognition of the gain
that resulted from the sale because P failed to elect such
treatment as required by I.R.C. sec. 1042.

Ronald L. Kahn and Ronald H. Isroff, for petitioner.

David S. Weiner, for respondent.

HAINES, Judge:  Respondent determined a deficiency of $395,279 in John W. Clause's (Mr. Clause's) Federal income tax for 1996.  The issue for decision is whether Mr. Clause duly elected, under section 1042,[1] to defer recognition of a gain that resulted from a sale of stock to an employee stock ownership plan (ESOP).

## FINDINGS OF FACT

Mr. Clause was 74 years old when he testified at the trial of this case on June 4, 2003.  Mr. Clause died on November 13, 2003, and his estate was substituted as petitioner by Order of the Court dated January 30, 2004.  To avoid confusion, the decedent, Mr. Clause, will be referred to as petitioner herein.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time he filed the petition, petitioner resided in Gainesville, Florida.

Petitioner retired from W.J. Ruscoe Co. (the company) in 1995 after working for the company since 1956.  The company was a

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. Amounts are rounded to the nearest dollar.

domestic C corporation that had no stock outstanding that was readily tradable on an established securities market. Petitioner became the majority shareholder in the company when the company founder passed away in 1975. Petitioner owned over 82 percent of the outstanding shares of the company at retirement. Petitioner did not receive these shares in a distribution from a plan described in section 401(a) or in a transfer pursuant to an option or other right to acquire stock to which section 83, 422, or 423 applied.

At the time of his retirement, petitioner consulted with his accountant, Ronald C. Midcap, C.P.A. (Mr. Midcap), and an attorney hired by Mr. Midcap, who Mr. Midcap believed was familiar with stock sales to ESOPs. Mr. Midcap had prepared petitioner's tax returns since 1978 and was also preparing the tax returns for the company. Mr. Midcap prepared petitioner's tax returns for 1996 but had never prepared a tax return with a transaction involving section 1042 before 1996.

On March 11, 1996, petitioner sold all of his shares in the company to the W.J. Ruscoe Company Employee Stock Ownership Trust created pursuant to an ESOP for $1,521,630. At the time of the sale, petitioner had a basis in the shares of $115,613 and had owned the shares for at least 3 years. On March 12, 1996, petitioner deposited the $1,521,630 sale proceeds into an account with South Trust Securities, Inc. (South Trust).

On February 18, 1997, through a sales representative of South Trust, petitioner made purchases of securities issued by domestic corporations, totaling $1,399,775, which satisfied the requirements of section 1042(c)(4) to be "qualified replacement property". All but approximately $120,000 of the proceeds was thus reinvested in qualified replacement property.

On or before April 15, 1997, petitioner timely filed his 1996 Federal tax return (original tax return) but did not report the sale of stock, in any manner, on the tax return. Further, the original tax return did not include a statement of election pursuant to section 1042, a statement from the company consenting to the application of sections 4978 and 4979A, or a statement of petitioner's purchase of qualified replacement property with the proceeds of the stock sale to the ESOP. Petitioner did not request an extension of time to file the original tax return.

On January 12, 1999, after respondent began an examination of the original tax return with regard to the stock sale, petitioner signed a Form 2848, Power of Attorney and Declaration of Representative, appointing Mr. Midcap and certain associates from Mr. Midcap's practice as petitioner's representatives with regard to the examination.

On November 28, 2000, respondent received petitioner's amended Federal tax return for 1996 (amended tax return). On the amended tax return, petitioner reported the portion of the gain

from the stock sale to the ESOP attributable to the proceeds that had not been reinvested in qualified replacement property; i.e., $121,807.

On July 20, 2001, respondent mailed petitioner a notice of deficiency for 1996. Respondent determined that petitioner realized a long-term capital gain of $1,406,017 as a result of the stock sale to the ESOP. Further, respondent determined that the gain must be included in taxable income for 1996 because petitioner did not make a timely election under section 1042 in order to defer the gain. On October 17, 2001, petitioner filed a petition with the Court with respect to the notice of deficiency.

Also on October 17, 2001, respondent received a second Federal tax return for 1996 (second tax return) from petitioner, which included the undated signature of petitioner and the signature of Mr. Midcap dated March 4, 1997. The second tax return had attached a statement of election pursuant to section 1042 predated to March 4, 1997, a statement of consent from the company consenting to the application of sections 4978 and 4979A predated to March 4, 1997, and a statement of petitioner's purchase of qualified replacement property predated to March 2, 1998.

On October 29, 2001, respondent received a second amended Federal tax return for 1996 (second amended tax return), signed by petitioner and dated October 27, 2000, and by Mr. Midcap and

dated October 11, 2000. The second amended tax return computed the same amount of tax owed as the amended tax return but differed from the amended tax return by the attachment of a statement of election under section 1042 predated to March 4, 1997, a statement of consent from the company consenting to the application of sections 4978 and 4979A predated to March 4, 1997, and a statement of petitioner's purchase of qualified replacement property predated to March 2, 1998.

OPINION

Section 1042 provides, generally, that a taxpayer may elect to defer recognition of the gain from a sale of stock to an ESOP in certain circumstances. In relevant part, section 1042 provides:

SEC. 1042(a). Nonrecognition of Gain.--

If--

(1) the taxpayer or executor elects in such form as the Secretary may prescribe the application of this section with respect to any sale of qualified securities,

(2) the taxpayer purchases qualified replacement property within the replacement period, and

(3) the requirements of subsection (b) are met with respect to such sale,

then the gain (if any) on such sale which would be recognized as long-term capital gain shall be recognized only to the extent that the amount realized on such sale exceeds the cost to the taxpayer of such qualified replacement property.

(b) Requirements To Qualify for Nonrecognition.--A sale of qualified securities meets the requirements of this subsection if-

(1) Sale to employee organizations.--The qualified securities are sold to-

(A) an employee stock ownership plan (as defined in section 4975(e)(7)), or

(B) an eligible worker-owned cooperative.

*     *     *     *     *     *     *

(3) Written statement required.--

(A) In general.--The taxpayer files with the Secretary the written statement described in subparagraph (B).

(B) Statement.--A statement is described in this subparagraph if it is a verified written statement of –

(i) the employer whose employees are covered by the plan described in paragraph (1), or

(ii) any authorized officer of the cooperative described in paragraph (1),

consenting to the application of sections 4978 and 4979A with respect to such employer or cooperative.

*     *     *     *     *     *     *

(c) Definitions; Special Rules. * * *

*     *     *     *     *     *     *

(6) Time for filing election.--An election under subsection (a) shall be filed not later than the last day prescribed by law (including extensions thereof) for filing the return of tax imposed by this chapter for the taxable year in which the sale occurs.

Thus, the election to apply section 1042 to a sale of stock (statement of election) and the verified written statement from the employer or authorized officer consenting to the application of sections 4978 and 4979A (statement of consent) are statutory requirements.  The statute also requires that the taxpayer elect to be treated under section 1042 by the due date of the tax return, including extensions.  Sec. 1042(c)(6).

The Secretary has prescribed a regulation for the form of the election required under section 1042.  Sec. 1.1042-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4333 (Feb. 4, 1986);[2] see sec. 1042(a).  Our analysis of the regulation is informed by Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984).  In Chevron, the U.S. Supreme Court stated the analysis as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, * * *.  * * * the question for the court is whether the agency's answer is based on a permissible construction of the statute.  [Fn. refs. omitted.]

---

[2]  Temporary regulations are entitled to the same weight as final regulations.  See Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996); Truck & Equip. Corp. v. Commissioner, 98 T.C. 141, 149 (1992).

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra at 842-843.

Using the Chevron analysis, we find Congress intended the Secretary to prescribe the regulation as to the form of the election.  First, the regulation was prescribed by the Secretary pursuant to the specific grant of authority stated in section 1042(a) that authorizes him to prescribe the form in which "the application of this section with respect to any sale of qualified securities" is to be elected by a taxpayer or executor.  Sec. 1042(a).  Further, the legislative history of section 1042 states that Congress intended the Secretary to prescribe the form of the election:  "Under the bill, the seller's nonrecognition election is made by filing (as prescribed by the Secretary) an election no later than the due date of the seller's income tax return for the taxable year in which the sale occurs."  S. Rept. 98-169 (Vol. I), at 333 (1984).

With regard to the form of the election, section 1.1042-1T, Temporary Income Tax Regs., supra, is a legislative regulation expressly authorized by the statute.  Sec. 1042(a).  A legislative regulation is given controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., supra at 844.  We do not find the regulation to be arbitrary, capricious, or manifestly contrary to section 1042 because the regulation is

consistent with the statute's prescription; i.e., to prescribe the form of the election. All items required by the regulation to be included in the election serve the purpose of carrying out the statute.

The regulation provides the information required in the statement of election, which includes a notarized statement of purchase of qualified replacement property, in order to elect treatment under section 1042. Sec. 1.1042-1T, Q&A-3(b), Temporary Income Tax Regs., 51 Fed. Reg. 4334 (Feb. 4, 1986). In relevant part, the regulation provides:

> A-2: (a) Under section 1042(b), a sale of qualified securities is one under which all of the following requirements are met:
>
>     \*     \*     \*     \*     \*     \*     \*
>
> (4) The taxpayer files with the Secretary (as part of the required election described in Q&A-3 of this section) a verified written statement of the domestic corporation (or corporations) whose employees are covered by the plan acquiring the qualified securities or of any authorized officer of the eligible worker-owned cooperative, consenting to the application of section 4978(a) with respect to such corporation or cooperative.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> Q-3: What is the time and manner for making the election under section 1042(a)?
>
> A-3: (a) The election not to recognize the gain realized upon the sale of qualified securities to the extent provided under section 1042(a) shall be made in a "statement of election" attached to the taxpayer's income tax return filed on or before the due date (including extensions of time) for the taxable year in which the sale occurs. If a taxpayer does not make a timely election under this section

to obtain section 1042(a) nonrecognition treatment with respect to the sale of qualified securities, it may not subsequently make an election on an amended return or otherwise.  Also, an election once made is irrevocable.

(b) The statement of election shall provide that the taxpayer elects to treat the sale of securities as a sale of qualified securities under section 1042(a), and shall contain the following information:

(1) A description of the qualified securities sold, including the type and number of shares;

(2) The date of the sale of the qualified securities;

(3) The adjusted basis of the qualified securities;

(4) The amount realized upon the sale of the qualified securities;

(5) The identity of the employee stock ownership plan or eligible worker-owned cooperative to which the qualified securities were sold; and

(6) If the sale was part of a single, interrelated transaction under a prearranged agreement between taxpayers involving other sales of qualified securities, the names and taxpayer identification numbers of the other taxpayers under the agreement and the number of shares sold by the other taxpayers.  See Q&A-2 of this section.

If the taxpayer has purchased qualified replacement property at the time of the election, the taxpayer must attach as part of the statement of election a "statement of purchase" describing the qualified replacement property, the date of the purchase, and the cost of the property, and declaring such property to be the qualified replacement property with respect to the sale of qualified securities.  Such statement of purchase must be notarized by the later of thirty days after the purchase or March 6, 1986.  In addition, the statement of election must be accompanied by the verified written statement of consent required under Q&A-2 of this section with respect to the qualified securities sold.

(c) If the taxpayer has not purchased qualified replacement property at the time of the filing of the statement of election, a timely election under this Q&A shall not be considered to have been made unless the taxpayer attaches the notarized statement of purchase described above to the taxpayer's income tax return filed for the taxable year following the year for which the election under section 1042(a) was made. Such notarized statement of purchase shall be filed with the district director or the director of the regional service center with whom such election was originally filed, if the return is not filed with such director.

Sec. 1.1042-1T, A-2, Q&A-3, 51 Fed. Reg. 4334 (Feb. 4, 1986).

Having not literally complied with the election requirements in the statute and the regulation, petitioner argues that he substantially complied with the requirements of section 1042 and should, therefore, receive the benefits of the section because the failure to file the elections was "purely administrative in nature". We disagree.

Section 1042 requires that an election, in the form prescribed by the Secretary, be made by the due date (including extensions) for filing the return for the year of the sale.[3]

---

[3] We note that, in certain circumstances, the Commissioner may grant an extension of time to make an election. If the taxpayer has not filed a request for an extension, an automatic extension of 6 months from the due date of the original tax return may be granted if the taxpayer has taken corrective action within the 6-month extension period. Sec. 301.9100-2T(b), Temporary Proced. & Admin. Regs., 61 Fed. Reg. 33368 (June 27, 1996). As relevant here, "corrective action" is defined as "filing an original or an amended return for the year the regulatory or statutory election should have been made and attaching the appropriate form or statement for making the election." Sec. 301.9100-2T(c), Temporary Proced. & Admin. Regs., 61 Fed. Reg. 33368 (June 27, 1996). Petitioner timely
(continued...)

According to the regulation, the election is to be made in the form of statements attached to the return.  Not only did petitioner's return for the year of sale fail to include such statements, it reported none of the information required to be provided in such statements.  Indeed, the return made no mention of the sale at all.

The Commissioner must be notified in some manner of a taxpayer's intentions to elect the benefit of section 1042 in order to facilitate the Commissioner's duty to ensure compliance with the tax laws and minimize disputes between taxpayers and the Internal Revenue Service.  Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 795 (11th Cir. 1984); Young v. Commissioner, 83 T.C. 831, 841 (1984), affd. 783 F.2d 1201 (5th Cir. 1986).  As we stated in Dunavant v. Commissioner, 63 T.C. 316, 320 (1974):  "We are not at liberty to infer that an election existed when the unequivocal proof required by Congress does not exist."  Petitioner did not alert respondent to the intended "election" under section 1042 until respondent received the amended tax return on November 28, 2000, over 3 years after the due date of the original tax return.

---

[3](...continued)
filed the original tax return on or before Apr. 15, 1997. Petitioner's first amended tax return was not received by respondent until Nov. 28, 2000.  We conclude that petitioner did not take the appropriate corrective action in order to receive an automatic extension of time for filing the election under sec. 1042.

There is no defense of substantial compliance for failure to comply with the essential requirements of the governing statute. See Tipps v. Commissioner, 74 T.C. 458, 468 (1980); Penn-Dixie Steel Corp. v. Commissioner, 69 T.C. 837, 846 (1978).  As the plain language of section 1042 indicates, the "essence" of the statute is to demand evidence of a binding election to accept the tax consequences imposed by the section.  See Dunavant v. Commissioner, supra at 320.  Inasmuch as there was nothing on petitioner's return to inform the IRS that an election was made and nothing on the return indicating that the sale had even occurred, the essence of a valid election was missing, and the use of the substantial compliance doctrine is insufficient to secure the benefits of section 1042.  Knight-Ridder Newspapers, Inc. v. United States, supra.

Petitioner argues that we have held that a taxpayer substantially complied with the requirements for an election even though the taxpayer failed to meet the literal requirements for an election.  See Bond v. Commissioner, 100 T.C. 32 (1993); Taylor v. Commissioner, 67 T.C. 1071, 1080 (1977); Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748 (1977); Columbia Iron & Metal Co. v. Commissioner, 61 T.C. 5 (1973); Sperapani v. Commissioner, 42 T.C. 308 (1964); Cary v. Commissioner, 41 T.C. 214 (1963).  The cases that petitioner cites are inapplicable because, as discussed above, the substantial compliance doctrine

may not be used as a defense in the instant case. Even if we assume, arguendo, that the cases apply, in each of those cases the taxpayer's attempt to make the election was evident on the original tax return, the taxpayers had provided most of the information required, and the information missing was not significant. See Bond v. Commissioner, supra at 41-42; Taylor v. Commissioner, supra at 1080; Hewlett-Packard Co. v. Commissioner, supra at 747-750; Columbia Iron & Metal Co. v. Commissioner, supra at 9; Sperapani v. Commissioner, supra at 329-332; Cary v. Commissioner, supra at 218; cf. Hewitt v. Commissioner, 109 T.C. 258, 264 (1997) (holding that the taxpayers were not entitled to deduct amounts in excess of those allowed by the Commissioner for stock contributions because the taxpayers provided "practically none of the information required by either the statute or the regulations"), affd. without published opinion 166 F.3d 332 (4th Cir. 1998). In the instant case, petitioner provided none of the information required by either the statute or the regulation regarding the transaction with the ESOP on his original tax return. Respondent, therefore, had no indication from the original tax return that the sale had even occurred.

It is clear to the Court that petitioner relied upon Mr. Midcap's knowledge in filing his tax returns for 1996. While we are sympathetic to petitioner regarding Mr. Midcap's failure to file a proper election under section 1042 on petitioner's behalf,

the general rule is that the duty of filing an accurate tax return cannot be avoided by placing responsibility on an agent, and taxpayers bear responsibility for the failure of their agents.  Pritchett v. Commissioner, 63 T.C. 149, 174 (1974); Am. Props. Inc. v. Commissioner, 28 T.C. 1100, 1116 (1957), affd. 262 F.2d 150 (9th Cir. 1958).  Therefore, petitioner must bear responsibility for the failure to file a timely election pursuant to section 1042.

We hold that petitioner is not able to defer recognition of a gain that resulted from a sale of stock to the ESOP because he failed to elect such treatment as required by section 1042.

We have considered all of petitioner's contentions, arguments, and requests that are not discussed herein, and we conclude that they are without merit or irrelevant.

To reflect the foregoing,

Decision will be

entered for respondent.