CURTIS G. GRUMBLES and LINDA S. GRUMBLES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grumbles
Docket No. 7809-90
United States Tax Court
T.C. Memo 1992-489; 1992 Tax Ct. Memo LEXIS 511; 64 T.C.M. (CCH) 606; August 27, 1992, Filed As Corrected September 16, 1992. *511 Decision will be entered for respondent. For Petitioners: Michael Sterns. For Respondent: M. Kathryn Bellis and Jaye Andras Caffrey. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioners' 1987 income tax in the amount of $ 10,213. At the time the petition in this case was filed, petitioners, husband and wife, resided in Deer Park, Texas. This case was submitted on the basis of a stipulation of facts and exhibits. The principal issue for decision is whether petitioners timely elected to treat a distribution received from a retirement plan in 1987 as having been received in 1986. Curtis G. Grumbles (hereinafter referred to as "petitioner" or "Grumbles") was born in 1951 or 1952. He began employment with Brown & Root U.S.A., Inc., on January 12, 1976. Petitioner was employed by Brown & Root as a Utility General Foreman over a Special Projects Group. After one year of employment with Brown & Root, petitioner began to participate in a qualified retirement plan. Under the terms of the plan, a percentage of his salary was deducted from his pay and deposited in a retirement account set up in his name. On December 18, 1986, petitioner *512 separated from service with Brown & Root in order to work elsewhere. As a consequence of separating from service with Brown & Root, Grumbles requested full payment of the tax-deferred funds maintained for him in his pension plan account. On February 23, 1987, he received a total distribution of the contents of his Brown & Root pension account, in the amount of $ 36,162.42 (the "lump-sum distribution"), as shown by a Form 1099R issued to Grumbles by Brown & Root, Inc. The lump-sum distribution consisted entirely of contributions by Brown & Root on which no income tax had been paid by petitioners. Grumbles had previously withdrawn from the plan all of his contributions which were included in his taxable income in the year the contributions were made. When Grumbles received the lump-sum distribution, Brown & Root provided him with a copy of a document bearing the heading "A Summary of Federal Regulations Concerning the Taxable Portion of Total Distributions." Grumbles was aware at the time he received his lump-sum distribution that he had the option of "rolling-over" the lump-sum distribution into a new retirement account and thereby continuing to defer taxation. Petitioners prepared *513 and timely filed a joint income tax return for 1986. This return did not include the lump-sum distribution. Petitioner knew that he could roll his lump-sum distribution over into another qualified retirement plan, but chose not to do so because he did not want to "tie up" the money in another retirement account. Instead, petitioners used the proceeds of the lump-sum distribution to pay off the mortgage on their home. In 1987, Grumbles went to work for Ethyl Corporation as an Equipment Maintenance Supervisor. At the close of the 1987 tax year, petitioners took their return information to National Business Consultants for preparation of their 1987 return. This "return information" included the Form 1099R, which reflected the February 1987 lump-sum distribution, and it also included the information on the tax treatment of distributions received from Brown & Root. Before discussing the preparation of petitioners' 1987 tax return, we will for convenience summarize some of the principles relating to the taxation of lump-sum distributions, as well as certain changes affecting those principles made by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085 (TRA). Prior to the enactment *514 of TRA, a taxpayer's marginal tax rate increased substantially as his income increased. Thus, an employee who received a comparatively large amount of cash in a given year from a qualified retirement plan would, absent some special treatment, frequently be subject to higher tax rates than would have applied had the same amount been received over a number of years. Subject to certain qualifications not in controversy here, section 402(e)(1) [1] of the Internal Revenue Code as in effect prior to January 1, 1987, permitted a taxpayer who received a "lump-sum distribution" to elect in essence to compute the tax on such distribution as though it were being received over a period of 10 years, with one-tenth of the distribution being received in each of the 10 years as the taxpayer's only income for that year. This manner of computation, called 10-year averaging, avoided the bunching of income in the year the distribution was received, and accordingly reduced the effective tax rates faced by the taxpayer. *515 For taxable years ending after December 31, 1986, TRA altered the treatment of lump-sum distributions received after that date by substituting 5-year averaging in place of 10-year averaging, TRA sec. 1122(a)(2), 100 Stat. 2466, and by restricting even 5-year averaging to taxpayers who had reached age 59-1/2 at the time of distribution. TRA sec. 1122(a)(1). However, exceptions to the elimination of 10-year averaging were provided for two groups of taxpayers, who continued to be eligible to elect 10-year averaging with respect to lump-sum distributions received after December 31, 1986. The first group consists of individuals who had reached age 50 by January 1, 1986. TRA sec. 1122(h)(5). Since petitioner had not reached age 50 by the statutorily-prescribed date, this exception is inapplicable here. A transitional rule was provided for the second group of employees, namely, those who had separated from service in 1986 and had, on account of such separation from service, received a lump-sum distribution in 1987 prior to March 16 of that year. TRA sec. 1124(a), 100 Stat. 2475. Grumbles falls within this group, but for reasons discussed hereinafter does not qualify for the exception *516 applicable to this group. Petitioners' 1987 income tax return was prepared by Ms. Charlotte Faulkner (Faulkner) of National Business Consultants, and signed by petitioners on March 28, 1988. This return included a copy of Form 4972, entitled "Tax on Lump-Sum Distributions", on which the lump-sum distribution was reported. As a result of Faulkner's failure to follow the instructions on Form 4972, she erroneously provided for petitioners' election to use the 5-year averaging method of determining the tax on Grumbles' lump-sum distribution. [2] Petitioners were not entitled to elect this method because Grumbles had not reached the age of 59-1/2 when he received the distribution. *517 The parties have stipulated that Faulkner "signed off" on petitioners' 1987 return on March 15, 1988. When Grumbles "retrieved" the completed income tax return from Faulkner, he "skimmed" the return and compared the income and deductions with his own records. Petitioners' 1987 return was due April 15, 1988, and there is no dispute that it was timely filed. As noted above, TRA contained a transitional rule for the benefit of a taxpayer who separated from service in 1986 and as a result received a lump-sum distribution in 1987 but prior to March 16, 1987. TRA section 1124(a) provided that (a) IN GENERAL. -- If an employee separates from service during 1986 and receives a lump sum distribution (within the meaning of section 402(e)(4)(A) of such Code) after December 31, 1986, and before March 16, 1987, on account of such separation from service, then, for purposes of the Internal Revenue Code of 1986, such employee may elect to treat such lump sum distribution as if it were received when such employee separated from service. This provision enabled a taxpayer who qualified for its benefits to elect to treat a lump-sum distribution that was actually received in 1987 as having been *518 received in 1986. Treatment of the lump-sum distribution as though it had been received in 1986 meant that the taxpayer was entitled to elect the benefits of 10-year averaging at the tax rates in effect in 1986. [3]
In the absence of such election, the distribution, which was in fact received by Grumbles in 1987, would obviously have to be reported for the year 1987. TRA section 1124(a) does not contain anything regarding the time or manner in which the election provided for therein is to be made. The instructions for the 1986 version of Form 4972 stated as follows: If you receive a lump-sum distribution after December 31, 1986, and before March 16, 1987, because you left your job in 1986, you may elect to treat such lump-sum distribution as if received in 1986, by including that amount *519 on this form. Also, write "Section 1124 Election" and the distribution amount, on the dotted line of line 3 of Parts II or III, whichever applies. The instructions for the 1986 form thus did not mention any deadline by which the election would need to be made in order for such election to be timely. However, Notice 87-13, 1987-1 C.B. 432, 443, stated that the election under TRA section 1124(a) must be made on a return (or amended return) filed by the employee for the employee's 1986 taxable year by the due date (with extensions) for the return for the 1987 tax year, by attaching a statement that such lump sum distribution is to be treated as a section 1124 lump sum distribution. [Emphasis added.] Moreover, the instructions accompanying the 1987 version of Form 4972 provided that "You must file the Form 1040X or amended return [on which the election is made] by the due date of your 1987 tax return (including extensions)." During their initial consultation with Faulkner with respect to their 1987 return, petitioners had discussed the possibility that they might have to amend their 1986 return to obtain optimal tax treatment of the lump-sum distribution. *520 However, the parties have stipulated that Grumbles "thought that he did not have to amend his 1986 return to obtain income averaging." Petitioners signed and adopted the return on March 28, 1988. In adopting the return as their own, petitioners relied on Faulkner. In the notice of deficiency, the Commissioner determined that petitioners were required to treat the $ 36,162 lump-sum distribution as ordinary income for 1987, the year in which Grumbles received it. In addition, the notice of deficiency stated that because petitioner received the lump-sum distribution before becoming disabled and before reaching age 59-1/2, petitioners were liable under section 72(t) for additional tax equal to 10 percent of the amount of the distribution. The parties have stipulated that "When the petitioners received the notice of deficiency * * * [Grumbles] read Form 4972 of his 1987 income tax return * * * and realized that he was ineligible to elect the five-year averaging method of determining the tax on his lump sum distribution." Petitioners filed amended income tax returns for their 1986 and 1987 taxable years on December 15, 1989, as described more fully in the following two paragraphs. *521 In the part of their 1986 amended return entitled "Explanation of Changes to Income, Deductions, and Credits", petitioners stated that they had added Form 4972, special 10-year averaging method for qualified lump sum distributions, with section 1124 election. Taxpayer separated from company December 18, 1986 * * * and requested full payment from retirement and savings plan. However, payment was not received until February, 1987. * * * Petitioners attached to their amended 1986 return a copy of the 1986 version of Form 4972, upon which the tax on the lump-sum distribution was computed using 10-year averaging. An additional $ 3,542 of tax was shown on the 1986 return as a result of the inclusion of the lump-sum distribution and the computation of the tax on this amount using 10-year averaging. However, petitioners did not include payment of the increased amount owed for 1986 pursuant to the amended return. On their 1987 amended return, petitioners eliminated the tax attributable to the lump-sum distribution as originally reported on the Form 4972 for that year. As a result, they entered the amount of $ 4,049 on the line entitled "Refund to be received". The record does *522 not indicate that the Commissioner has refunded this amount, or has otherwise acted upon petitioners' amended income tax returns for either 1986 or 1987. There is no dispute that, as applicable to petitioners, the deadline imposed by the Commissioner for the making of an election under TRA section 1124(a) required such election to be made on an original or amended 1986 return filed by April 15, 1988. The election was not made by the deadline as set forth by the Commissioner. The main point of contention between the parties is whether the election under TRA section 1124(a) was timely despite the fact that petitioners' amended 1986 return, which contained the election, was filed after that deadline. We must decide (1) whether the deadline established by the Commissioner is binding on petitioners, and (2) if so, whether petitioners' election should nevertheless be held effective on the ground that they "substantially complied" with that deadline. We must also decide whether petitioners are liable for the addition to tax imposed by section 72(t). We hold in favor of the Government on all issues. 1. Validity of the administrative deadline for making an election under section 1124(a) *523 of the Tax Reform Act of 1986. It is well established that a regulation will be upheld unless unreasonable and plainly inconsistent with the statute. E.g., Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501 (1948). Certainly, if the deadline here at issue were set forth in a regulation, we have no doubt that it would pass muster. To be sure, what we are concerned with here is not a regulation, but rather a notice and a form. However, section 7805(d) provides in part that "any election under this title shall be made at such time and in such manner as the Secretary shall by regulations or forms prescribe." And in view of the language of section 7805(d), we think that the validity of the deadline fixed in the instructions accompanying Form 4972 should be judged by standards similar to those relating to regulations themselves, even though not quite as compelling. In our judgment, the April 15, 1988, deadline established by the Commissioner [4] for the making of an election under TRA section 1124(d) was reasonable and entirely consistent with the language and intent of the statute. [5] As noted above, TRA section 1124(a) states simply that an eligible individual *524 "may elect to treat such lump sum distribution as if it were received when such employee separated from service." This language leaves open the question of how long a taxpayer had in which to make the election -- a gap that the Secretary was authorized to fill under section 7805(d). *525 The deadline imposed under section 7805(d) was reasonable when viewed in terms of the probable actions of taxpayers who would be eligible to make the election. By its terms, TRA section 1124(a) applied only to lump-sum distributions received in 1987, which a taxpayer might not consider in the preparation of his 1986 tax return. It was when an eligible taxpayer began preparing his 1987 tax return that he would definitely be likely to learn that he could elect to treat the lump-sum distribution received in 1987 as though it had been received in 1986. Under the deadline set forth in the instructions to Form 4972, a taxpayer could make an election under TRA section 1124(a) as late as the due date (including extensions) of his 1987 income tax return. Because a taxpayer would normally have had to report a lump-sum distribution received in 1987 on his return for that year, it is reasonable to assume that a taxpayer would have investigated the various possible ways to treat such a lump-sum distribution by the time his 1987 return was due. Thus, it was also reasonable for the Commissioner to assume that by the time the 1987 return was due, the taxpayer would have discovered the availability *526 of an election under TRA section 1124(a). The use of the deadline selected by the Commissioner also meant that the election did not have to be made until the taxpayer's 1987 tax year was over. By that time, the taxpayer had substantially more information about his 1987 income, credits, and deductions, than he would have had at the time he prepared his 1986 return. This additional information would undoubtedly be helpful to taxpayers in making more informed decisions regarding the costs and benefits of 10-year averaging pursuant to a TRA section 1124(a) election. In summary, the Secretary clearly had authority under section 7805(d) to prescribe a deadline by which the TRA section 1124(a) election had to be made. We hold that the April 15, 1988, deadline was reasonable and consistent with TRA section 1124(a). [6]
*527 2. Whether petitioners' election, although made after the deadline imposed by the Commissioner, should nevertheless be given effect. As indicated above, petitioners did not attempt to make the election until they filed their amended returns on December 15, 1989. Indeed, the parties have stipulated that "Petitioners did not make an election by April 15, 1988, the due date of their 1987 return, to include the lump sum distribution as if received in 1986 by including it in their 1986 taxable income." Since, as applicable to petitioners, the deadline for the making of an election under TRA section 1124(a) was April 15, 1988, petitioners did not make this election by the required deadline. Petitioners therefore cannot treat their lump-sum distribution as though it were received in 1986 unless there is some valid basis for defeating the binding effect of the deadline. In determining whether an election made after an administrative deadline can nevertheless be effective, we have held that "the critical question * * * is whether 'the original action (or the failure to act) on the part of the taxpayer did not amount to an election against, and was not inconsistent with, the position *528 which the taxpayer ultimately did adopt.'" Dougherty v. Commissioner, 60 T.C. 917, 940 (1973), (quoting National Western Life Insurance Co. v. Commissioner, 54 T.C. 33, 38 (1970)). We hold that petitioners' original action amounted to an election against, and was inconsistent with, the position which they subsequently adopted. Petitioners originally reported the lump-sum distribution on their 1987 return. They now contend that the lump-sum distribution is properly reported in 1986 pursuant to an election under TRA section 1124(a) made in their amended 1986 return. These two positions are completely inconsistent with each other. Petitioners' reporting of the lump-sum distribution in 1987 in their timely 1987 return amounts to an election not to report that same item of income in 1986. They are precluded from changing their position on this issue in an amended 1986 return filed after the April 15, 1988, deadline. We reach this result despite the fact that petitioners' election in their original 1987 return to apply 5-year averaging to the lump-sum distribution was not available to them because Grumbles did not meet the age requirement. *529 It is not important that petitioners may have mistakenly believed that they were entitled to use 5-year averaging when they reported the distribution in 1987. The essence of petitioners' original position was that the distribution was includable in their gross income in 1987, and they now claim they are entitled to take the position that it was received in 1986. These two positions are fundamentally inconsistent, and petitioners are now precluded from electing the benefits of section 1124(a) of the Tax Reform Act of 1986. Petitioners argue that their election is valid by reason of the doctrine of "substantial compliance". They rely on cases such as American Air Filter Co. v. Commissioner, 81 T.C. 709 (1983). However, unlike American Air Filter, the present case does not involve either, (a) a "clerical oversight" in respect of an election that was later remedied, or (b) a tardy election where the taxpayer had timely indicated its intention to make the election. (a) Here, there was plainly no clerical oversight. Petitioners, in reliance upon their tax return preparer, had deliberately reported the distribution as 1987 income. (b) In the typical case in *530 which the taxpayer prevailed, the taxpayer had given at least some indication of his intent to make the election prior to the deadline, but had failed to comply with some other administrative requirement involving the manner in which the election was indicated or the adequacy of the supporting documentation. American Air Filter Co. v. Commissioner, 81 T.C. 709, 720-721 (1983); Tipps v. Commissioner, 74 T.C. 458, 468 (1980); Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 750 (1977); Van Keppel v United States, 206 F. Supp. 42 (D. Kan. 1962), affd. 321 F.2d 717 (10th Cir. 1963). By no stretch of the imagination can it be said that petitioners here gave any timely indication of an intent to treat the distribution as income received in 1986. This case is governed not by the doctrine of substantial compliance, but by the doctrine of "inconsistent positions" as set forth in the National Western Life and Dougherty cases. See supra p. 14. 3. The addition to tax under section 72(t). Section 72(t)(1)[7] provides as follows: (t) 10-Percent Additional Tax on Early Distributions *531 From Qualified Retirement Plans. -- (1) Imposition of additional tax. -- If any taxpayer recieves any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income. There is no dispute that Grumbles received his lump-sum distribution from a qualified retirement plan, or that the entire amount of such distribution was includable in petitioners' gross income. Nor do petitioners contend that Grumbles' distribution falls within any of the statutory exemptions found in section 72(t)(2). However, they argue that their failure to timely file the amended 1986 return containing their election is excusable because Grumbles relied on the advice of the income tax preparer and because he used "ordinary business care" in examining his return. We reject this contention. *532 Petitioners' argument depends on an unstated assumption that the addition to tax imposed under section 72(t)(1), like the addition to tax imposed under section 6651, can be avoided if the taxpayer exercised prudence and acted reasonably. This assumption is simply wrong. The language of section 72(t)(1) does not indicate or even suggest that the reasonableness of the taxpayer's actions will affect whether the taxpayer is liable for an addition to tax under that section. Moreover, the relevant legislative history suggests that section 72(t) was intended to discourage using lump-sum distributions for nonretirement purposes, as was done by petitioners. The Senate Finance Committee Report explains that the section 72(t) addition to tax was created to "recapture a measure of the tax benefits that have been provided" by the deferral of income taxes, and to deter the diversion of tax-favored retirement savings to nonretirement uses. S. Rept. 99-313 (1986), 1986-3 C.B. (Part 3) 613; see also H. Rept. 99-426 (1985), 1986-3 C.B. (Part 2) 729. When Grumbles received the distribution, he was only 35 years old and still actively employed. Petitioners spent *533 the lump-sum distribution to pay off the mortgage on their home, and obviously did not use it for retirement purposes. Petitioners' reliance upon Larotonda v. Commissioner, 89 T.C. 287 (1987), is misplaced. There it was held that the taxpayer was not liable for the addition to tax imposed by section 72(m)(5), which is similar to section 72(t)(1). However, Larotonda involved an involuntary distribution pursuant to an IRS levy on the taxpayer's Individual Retirement Account. Larotonda v. Commissioner, supra at 289. That case is distinguishable. Here, Grumbles actively sought the distribution at issue. We hold that petitioners are subject to the addition to tax imposed by section 72(t)(1). We have considered various other contentions made by the parties, and have not deemed it necessary to discuss them. In order to reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As stipulated by the parties: Part I of Form 4972 is entitled, "Complete this part to see if you qualify to use Form 4972". In answer to question "2" of Part I which asks, "were you age 50 or over on January 1, 1986", the return preparer correctly checked the box marked "no". Almost directly below this question, Form 4972 states: "If you answered "no" to 2 or 3, do not complete the rest of this form." [The rest of the form was nevertheless completed and 5-year averaging was claimed.]↩
3. TRA sec. 1124(a) was amended by Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1011A(d)(1), 102 Stat. 3476. Neither party has treated this amendment as relevant here, and we do not discuss it further.↩
4. Neither Notice 87-13, 1987-1 C.B. 432↩, nor the instructions to the 1987 version of Form 4972 indicated whether the deadline had been established by the Secretary, or whether another official had established such deadline under delegation by the Secretary. For convenience, however, we sometimes refer to this deadline as having been fixed by the Commissioner. 5. In upholding the deadline for the making of an election under TRA sec. 1124(a), we rely on the Secretary's authority under sec. 7805(d) to provide rules for the time of making elections. This authority was exercised by means of the instructions to the 1987 version of Form 4972. While the deadline for the making of the election was also set forth in Notice 87-13, 1987-1 C.B. 432↩, 443, we express no opinion as to what the result in this case would have been if the deadline had been prescribed only in the notice, and not in the instructions to Form 4972.
6. Unlike the present case, the taxpayers in Younger v. Commissioner, T.C. Memo. 1992-387, and Merritt v. Commissioner, T.C. Memo. 1992-443↩, made their election within the deadline. The fact that the election was made in a timely-filed 1987 return, rather than in an amended 1986 return, did not preclude the application of TRA sec. 1124(a).
7. Sec. 72(t)↩ entered the Internal Revenue Code through TRA sec. 1123(a), 100 Stat. 2472. It applies to taxable years beginning after December 31, 1986. TRA sec. 1123(e)(1).