109 T.C. No. 12


UNITED STATES TAX COURT


JOHN T. AND LINDA L. HEWITT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17146-95.                    Filed October 29, 1997.


        During 1990 and 1991, Ps donated nonpublicly
traded stock for which they claimed charitable
contribution deductions in amounts which the parties
agree represent the fair market values of such stock.
Ps did not obtain qualified appraisals of the stock
prior to filing their returns, and Ps did not attach a
summary thereof to the returns.  <u>Held</u>, Ps have not
substantially complied with sec. 1.170A-13, Income Tax
Regs., and are not entitled to charitable contribution
deductions in excess of that allowed by R.


        <u>Neil L. Rose</u>, <u>Donna S. Rucker</u>, and <u>Robert E. Lee</u>, for

petitioners.

        <u>Deborah C. Stanley</u>, for respondent.

OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes and penalties under section 6662(a)[1] as follows:

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 1990 | $17,332 | $3,466 |
| 1991 | 22,945 | 4,589 |

After concessions, the sole issue for decision is whether petitioners should be allowed charitable deductions in amounts greater than those allowed by respondent for gifts of nonpublicly traded stock.

<u>Background</u>

This case was submitted fully stipulated under Rule 122. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners resided in Virginia Beach, Virginia, at the time they filed their petition.  They filed their joint Federal income tax returns for the years in issue with the Internal Revenue Service Center, Philadelphia, Pennsylvania.

Petitioner John T. Hewitt, along with about a dozen other investors, bought Mel Jackson's Tax Service in Tidewater,

---

[1]  Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Virginia (the company), in 1982.  In fiscal year 1987, the company generated over $1 million in revenues and by 1988, was operating out of 50 office locations in three States.  In 1988, the company name was changed to Jackson Hewitt Tax Service, Inc. (Jackson Hewitt).

During the taxable year 1990, petitioners made gifts of Jackson Hewitt stock to the Hewitt Foundation (the foundation) and the Foundry United Methodist Church (the church).  During 1991, petitioners made gifts of Jackson Hewitt stock to the foundation and the church.

At the time of the gifts, the market for Jackson Hewitt stock operated primarily through individuals or organizations contacting the company and offering to buy or sell at a given price.  In arriving at the price, the potential purchaser had access to information with respect to the most recent trades and offers to sell by other shareholders.  At the time of the gifts, approximately 700,000 shares of Jackson Hewitt stock were outstanding in the hands of approximately 400 individuals and organizations (among whom were employees, franchisees, and others unrelated to the company).  Between May 1, 1990, and December 31, 1991, 317 stock transfers were recorded in the company's stock book, involving approximately 100,000 shares.

In addition to the company market, another market operated through Wheat, First Securities, Inc., in which hundreds to

thousands of shares of Jackson Hewitt stock were traded between 1990 and 1992 for about 80 individual accounts.

On January 29, 1994, the company began trading on NASDAQ. Prior to January of 1994, Jackson Hewitt stock did not qualify as "publicly traded securities" under section 1.170A-13(c)(7)(xi), Income Tax Regs.

Petitioners filed timely joint Federal income tax returns for the taxable years 1990 and 1991.  Attached to petitioners' 1990 return were Schedule A (Itemized Deductions), noting Gifts to Charity other than cash or check in the amount of $35,745,[2] and Form 8283 (Noncash Contributions).  In section B of Form 8283 (Appraisal Summary of $5000 or More Items), petitioners reported the donation of two blocks of stock valued at $26,000 and $7,000, respectively, which they reported as acquired by purchase on August 14, 1982, for $522 and $131, respectively, and for which they claimed deductions of $26,000 and $7,000, respectively.

Attached to petitioners' 1991 Form 1040 were Schedule A, noting Gifts to Charity other than cash or check in the amount of $89,479,[3] and Form 8283.  In section A of Form 8283 (items of $5000 or less and certain publicly traded securities), petitioners reported a contribution to the foundation of stock acquired by purchase on August 1, 1982, with a basis of $2,832

---

[2]  This amount includes $2,745 in gifts not at issue.

[3]  This amount includes $1,479 in gifts not at issue.

and a value of $48,000.  They also reported a contribution to the church of stock acquired by purchase on August 1, 1982, with a basis of $3,057 and a value of $40,000.[4]  No section B (Appraisal Summary of $5,000 or More Items) was attached.

Petitioners did not obtain a qualified appraisal, as defined in section 1.170A-13(c)(3), Income Tax Regs., of the Jackson Hewitt stock they donated in 1990 and 1991.  The fair market values claimed by petitioners with respect to their gifts of Jackson Hewitt stock in 1990 and 1991 were based on the average per-share price of Jackson Hewitt stock traded in bona fide, arm's-length transactions at approximately the same time as petitioners made the gifts.

In the notice of deficiency, respondent allowed petitioners deductions for the gifts of Jackson Hewitt stock in 1990 and 1991 in the amounts of their basis in that stock only.[5]

Discussion

Section 170(a)(1) provides:  "There shall be allowed as a deduction any charitable contribution * * * payment of which is made within the taxable year.  A charitable contribution shall be allowable as a deduction only if verified under regulations

---

[4]  Petitioners incorrectly allocated the value of the two blocks of stock on the Form 8283; the correct allocation is $32,000 for the 800 shares donated to the foundation and $56,000 for the 1,400 shares donated to the church.

[5]  However, respondent incorrectly computed the basis for 1991; the correct amount is $5,889, instead of $5,189.

prescribed by the Secretary."  Where the charitable contribution consists of property other than cash, the value of the contribution, with exceptions not relevant here, is the fair market value of the donated property at the time of contribution. Sec. 1.170A-1(c)(1), Income Tax Regs.

A further applicable statutory provision is section 155 of the Tax Reform Act of 1984 (Division A of the Deficit Reduction Act of 1984), Pub. L. 98-369, 98 Stat. 494, 691 (hereinafter referred to as section 155), which had its origins in proposed amendments to section 170 set forth in section 154 of the legislation as passed by the Senate.  S. Comm. on Finance, Deficit Reduction Act of 1984, Statutory Language of Provisions Approved by the Committee on March 21, 1984, S. Prt. 98-169, vol. II, at 449-459 (S. Comm. Print 1984); H. Conf. Rept. 98-861, at 993-999 (1984), 1984-3 C.B. (Vol. 2) 1, 247-253.  The Senate provision contained detailed rules regarding substantiation of contributions of property to charitable organizations.[6]  Section 155, in its final form, adopted an approach which did not amend section 170 but provided separate rules for such substantiation.

---

[6]  The House version did not contain a comparable provision. H. Conf. Rept. 98-861, at 993 (1984), 1984-3 C.B. (Vol. 2) 1, 247. Subsec. (j)(5) of the proposed Senate amendment to sec. 170 provided that failure to comply with the appraisal provision would result in the disallowance of the excess of the value of the charitable contribution over basis rather than the entire contribution.  S. Comm. on Finance, Deficit Reduction Act of 1984, Statutory Language of Provisions Approved by the Committee on March 21, 1984, S. Prt. 98-169, vol. II, at 451-452 (S. Comm. Print 1984).

It incorporated many of the provisions of the Senate version but left the details of implementation to regulations to be issued by the Secretary of the Treasury.  The provisions relevant to this case state:

> Sec. 155.  Substantiation of Charitable Contributions; Modifications of Incorrect Valuation Penalty.
>
> > (a)  Substantiation of Contributions of Property.--
> >
> > > (1)  In general.--Not later than December 31, 1984, the Secretary shall prescribe regulations under section 170(a)(1) of the Internal Revenue Code of 1954, which require any individual, closely held corporation, or personal service corporation claiming a deduction under section 170 of such Code for a contribution described in paragraph (2)--
> > >
> > > > (A) to obtain a qualified appraisal for the property contributed,
> > > >
> > > > (B)  to attach an appraisal summary to the return on which such deduction is first claimed for such contribution, and
> > > >
> > > > (C) to include on such return such additional information (including the cost basis and acquisition date of the contributed property) as the Secretary may prescribe in such regulations.
> >
> > Such regulations shall require the taxpayer to retain any qualified appraisal.
> >
> > > (2)  Contributions to which paragraph (1) applies.--For purposes of paragraph (1), a contribution is described in this paragraph--
> > >
> > > > (A)  if such contribution is of property (other than publicly traded securities), and
> > > >
> > > > (B)  if the claimed value of such property (plus the claimed value of all

similar items of property donated to 1 or
more donees) exceeds $5,000.

In the case of any property which is nonpublicly
traded stock, subparagraph (B) shall be applied by
substituting "$10,000" for $5,000".

The Secretary of the Treasury has implemented the foregoing
provisions by issuing section 1.170A-13, Income Tax Regs., which,
among other matters, provides that a "qualified appraisal" be
obtained prior to the filing of the return in which the deduction
is claimed and that an appraisal summary be submitted with that
return.

Respondent disallowed the amounts of petitioners' charitable
deductions for the Jackson Hewitt stock in excess of basis due to
the lack of qualified appraisals.[7]  Respondent does not dispute
that petitioners made charitable contributions to the church and
foundation within the respective taxable years or that the
claimed values did not represent the fair market values of such
contributions.[8]  Petitioners maintain that they should be allowed
the claimed deductions because their use of the average per-share
price of Jackson Hewitt stock traded in bona fide, arm's-length
transactions constituted substantial compliance with the

---

[7]  Respondent has not sought to disallow the contributions
in their entirety.  Cf. D'Arcangelo v. Commissioner, T.C. Memo.
1994-572; see also supra note 6.

[8]  Respondent has conceded the sec. 6662(a) penalty insofar
as it relates to the contributions to the church and the
foundation.

requirements of section 1.170A-13, Income Tax Regs., and relieved them of any obligation to obtain a qualified appraisal.

It is clear that petitioners did not obtain any qualified appraisal, and no summary of any such appraisal was submitted with the returns. The returns only reflected gifts of stock without identifying the gifts as Jackson Hewitt stock, without any indication of the number of shares, and setting forth only the cost and claimed values. The question is whether petitioners satisfied the appraisal requirements of the statute and the regulations.

Petitioners rely on Bond v. Commissioner, 100 T.C. 32 (1993), to sustain their position that a qualified appraisal is not a requirement under the circumstances herein. In that case, respondent challenged a charitable deduction for failure to obtain a qualified appraisal prior to filing the return. The parties stipulated there was no valuation overstatement. We found that the taxpayers had had the subject property, two blimps, appraised by a qualified appraiser within the specified time frame, and that substantially all of the information required by respondent's regulations, section 1.170A-13(c)(3)(i), Income Tax Regs., was contained in an appraisal summary, signed by a qualified appraiser,[9] set forth in the Form 8283 attached to

_____

[9] The only omitted item of required information was the qualifications of the appraiser, which were promptly furnished to respondent at the beginning of the audit of the return. See Bond
(continued...)

their return. Accordingly, we held that the taxpayers had substantially complied with the requirements of the statute and the regulations even though a separate appraisal had not been obtained and the qualifications of the appraiser were omitted from the appraisal summary attached to the return.

In so holding, we stated:

the essence of section 170 is to allow certain taxpayers a charitable deduction for contributions made to certain organizations. * * * However, the reporting requirements [of section 1.170A-13, Income Tax Regs.,] do not relate to the substance or essence of whether or not a charitable contribution was actually made. * * * [Bond v. Commissioner, 100 T.C. at 41.]

As a consequence, we concluded that the reporting requirements of section 1.170A-13, Income Tax Regs, were directory, not mandatory, and therefore, that these requirements could be met by substantial, rather than strict, compliance. Bond v. Commissioner, 100 T.C. at 41. In effect, we held that the appraisal summary itself constituted the required appraisal. In this connection, we note that the appraisal requirements may not be entirely procedural so as to justify the application of the substantial compliance rules under any and all circumstances. See Atlantic Veneer Corp. v. Commissioner, 812 F.2d 158, 160-161 (4th Cir. 1987), affg. 85 T.C. 1075 (1985).

We find nothing in Bond v. Commissioner, supra, which relieves petitioners of the requirement of obtaining a qualified

_____

⁹(...continued)
v. Commissioner, 100 T.C. 32, 41-42 (1993).

appraisal.  Such a requirement is statutorily imposed by section

155(a)(1)(A), and its impact is reflected in the legislative

history of that provision.  See H. Conf. Rept. 98-861, at 995-

996 (1984), 1984-3 C.B. (Vol. 2) 1, 249-250, stating:

> pursuant to present law (sec. 170(a)(1)), which
> expressly allows a charitable deduction only if the
> contribution is verified in the manner specified by
> Treasury regulations, no deduction is allowed for a
> contribution of property for which an appraisal is
> required under the conference agreement unless the
> appraisal requirements are satisfied.
>
>       *       *       *       *       *       *       *
>
>     For donations of property as to which the donor
> appraisal requirements apply, the donor must obtain and
> retain a qualified written appraisal by a qualified
> appraiser for the property contributed and must attach
> a signed appraisal summary to the return on which the
> deduction is first claimed (with such other information
> as prescribed by regulations).

Petitioners herein furnished practically none of the

information required by either the statute or the regulations.

Given the statutory language and the thrust of the concerns about

the need of respondent to be provided with appropriate

information in order to alert respondent to potential

overvaluations, see _infra_ p. 13, petitioners simply do not fall

within the permissible boundaries of _Bond v. Commissioner_, _supra_,

where an appraisal summary, which was completed by a qualified

appraiser, contained most of the required information and could

therefore be treated as a written appraisal, was attached to the

return.  Cf. _D'Arcangelo v. Commissioner_, T.C. Memo. 1994-572

(respondent prevailed where no qualified appraisal was obtained).

Petitioners also seek to support their position by claiming that there was a market which provided support for their use of the average per-share price of the Jackson Hewitt stock.  This position is without merit.  Given the amounts of the gifts in this case, the exemption from the qualified appraisal requirements is statutorily limited to "publicly traded securities".  See sec. 155(a)(2)(A).  The parties have stipulated that the Jackson Hewitt stock did not qualify as "publicly traded securities".  See supra p. 4; see also Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 506 n.21 (J. Comm. Print 1985).  In this context, the fact that Bond v. Commissioner, 100 T.C. 32 (1993), involved blimps which were not as easily valued as the Jackson Hewitt stock is irrelevant.

Petitioners' reliance on cases such as Taylor v. Commissioner, 67 T.C. 1071 (1977); Columbia Iron & Metal Co. v. Commissioner, 61 T.C. 5 (1973); Sperapani v. Commissioner, 42 T.C. 308 (1964); Cary v. Commissioner, 41 T.C. 214 (1963), where taxpayers prevailed on the basis of substantial compliance is likewise without merit.  The key to those cases is that, as in Bond v. Commissioner, supra, the taxpayers had provided most of the information required, and the single defect in furnishing

everything required was not significant.[10]  Cf. Knight-Ridder Newspapers v. United States, 743 F.2d 781, 793-797 (11th Cir. 1984).

Moreover, it is clear that the principal objective of section 155 was to provide a mechanism whereby respondent would obtain sufficient return information in support of the claimed valuation of charitable contributions of property to enable respondent to deal more effectively with the prevalent use of overvaluations.  See S. Comm. on Finance, Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984, S. Prt. 98-169, vol. I, at 444-445 (S. Comm. Print 1984); Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 (J. Comm. Print 1985); cf. Atlantic Veneer Corp. v. Commissioner, 85 T.C. 1075, 1084 (1985), affd. 812 F.2d 158 (4th Cir. 1987).  Such need exists even though in a particular case, such as this, it turns out that the taxpayer's deduction was in fact based on the fair market value of the property.  This happenstance is insufficient to constitute substantial compliance with a statutory condition to obtaining the claimed deduction. As we see it, what petitioners are seeking is not the application

---

[10]  We recognize that Cary v. Commissioner, 41 T.C. 214 (1963), may not fall within this description, but it is clear that we were persuaded that the omission involved therein was solely through inadvertence.  Petitioners' failure to comply goes far beyond inadvertence.  Cary is therefore clearly distinguishable.

of the substantial compliance principle but an exemption from the clear requirement of the statute and regulations in a situation where there is no overvaluation of the charitable contribution. We are not prepared to follow that path to decision.

We hold that petitioners are not entitled to deduct amounts in excess of those allowed by respondent for the contributions of Jackson Hewitt stock.  See supra note 7.

To take into account the concessions of the parties,

Decision will be entered

under Rule 155.