118 T.C. No. 19

UNITED STATES TAX COURT

JOHN C. AND TATE M. TODD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17046-99.                    Filed April 19, 2002.

        R disallowed deductions claimed on account of a
contribution of corporate shares to a private
foundation (other than a private foundation described
in sec. 170(b)(1)(E), I.R.C.) on the alternative
grounds that the shares were not qualified appreciated
stock, within the meaning of sec. 170(e)(5)(B)(i),
I.R.C., and that the shares were not publicly traded
securities, within the meaning of sec. 1.170A-
13(c)(7)(xi), Income Tax Regs., so that the
substantiation requirements of sec. 1.170A-13(c)(1)(i),
Income Tax Regs., applied but were not satisfied.
        1. <u>Held</u>:  Deductions disallowed; the shares were
not qualified appreciated property.
        2. <u>Held</u>, <u>further</u>, deductions disallowed on
alternative grounds; the shares were not publicly
traded securities, so that the substantiation
requirements were applicable but not satisfied.

Richard C. Kaufman, for petitioners.

Frederick J. Lockhart, Jr., for respondent.


HALPERN, Judge:  By notice of deficiency dated August 13, 1999 (the notice), respondent determined deficiencies in petitioners' Federal income tax liabilities for petitioners' taxable (calendar) years 1994 through 1997 (the audit years) of $14,181, $61,540, $88,832, and $33,971, respectively.  Among the adjustments giving rise to respondent's determination of deficiencies is respondent's disallowance of deductions for charitable contributions petitioners claimed for each of the audit years (the disallowed deductions).  Petitioners have assigned error only with respect to that disallowance.  Accordingly, we need decide only whether petitioners are entitled to the disallowed deductions, all other adjustments being deemed conceded by petitioners.  See Rule 34(b)(4).

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Petitioners bear the burden of proof.  See Rule 142(a).

FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulations of facts, with accompanying exhibits, are incorporated herein by this reference.

Residence

Petitioners resided in Greeley, Colorado, at the time the petition was filed.

The Foundation and Contribution Thereto

On December 20, 1994, petitioners formed the Todd Family Foundation (the foundation), a Colorado nonprofit corporation.

On December 27, 1994, petitioner John C. Todd (petitioner) transferred 6,350 shares of stock (the transfer date, the transfer, and the shares, respectively) in Union Colony Bancorp (Bancorp), a Colorado corporation, to the foundation.  On the transfer date, the foundation was a private foundation (as defined in section 509(a)), other than a private foundation described in section 170(b)(1)(E).

Petitioners' Tax Returns

Petitioners filed a Form 1040, U.S. Individual Income Tax Return (the Form 1040), for 1994.  In calculating their taxable income shown on the Form 1040, petitioners claimed a deduction for a charitable contribution on account of the transfer. Attached to the Form 1040 is a Form 8283, Noncash Charitable Contributions (the Form 8283), on which petitioners provided

information concerning the transfer, including petitioners' "cost or adjusted basis" in the shares, $33,338, the fair market value of the shares, $553,847, and a statement of the method used to determine the fair market value: "Sales of other shares at same time". The portion of the Form 8283 that provides for the certification of an appraiser is without entries. No appraisal summary with respect to the shares is attached to the Form 8283 or otherwise included with the Form 1040. Because of contribution limitations, petitioners claimed a deduction on the Form 1040 on account of the transfer in the amount of $88,879. They claimed additional deductions of $152,692, $221,066, and $56,906 on their 1995, 1996, and 1997 income tax returns, respectively.

Sale of the Shares

The statement on the Form 8283 that the fair market value of the shares was $553,847 is based on the foundation's sale of the shares (for that amount) on January 5, 1995, to First National of Nebraska, Inc., a Nebraska corporation, pursuant to an agreement of merger involving Bancorp.

Bancorp and the Bank

On the transfer date, Bancorp was a bank holding company, owning all of the issued and outstanding shares of stock of Union Colony Bank, Greeley, Colorado, a state-chartered Colorado bank (the bank). On that date, shares of Bancorp were not listed on

the New York Stock Exchange, the American Stock Exchange, or any city or any regional stock exchange, nor were the shares regularly traded in the national or any regional over-the-counter (OTC) market for which published quotations are available. The shares were not shares of an open-end investment company (commonly know as a mutual fund), as provided in section 1.170A-13(c)(7)(xi)(A)(3), Income Tax Regs.

Procedure for Purchase or Sale of Shares of Bancorp

Before and throughout 1994, the procedure for someone wishing to purchase or sell shares of Bancorp was to contact an officer of the bank or a local stockbroker specializing in the shares of Bancorp. The bank or broker would try to match a potential seller with a potential buyer. That could prove difficult, since Bancorp shares were not frequently sold. The bank maintained a numerical list, by certificate number, of all share transactions (the bank's list). The bank's list showed the date, seller, buyer, number of shares, share cost (if available), and certificate number. Gill & Associates, Inc. (Gill & Associates), a member of the National Association of Securities Dealers since 1984, acted as a placement agent or "matchmaker" for certain of the sales of the shares. As a matchmaker, Gill & Associates maintained a list of individuals wishing to purchase shares and contacted these individuals when approached by others interested in selling shares. In order to quote a price to an

interested purchaser, a representative from Gill & Associates would call the bank to obtain the net asset value on the books of the corporation. Gill & Associates believed the book value was a fair value for the stock of Bancorp, and it used the book value to compute what it believed was a fair price for a share of Bancorp. Gill & Associates did not have access to the bank's list. Although Gill & Associates could readily quote to an interested buyer what it believed to be a fair price for Bancorp shares, Bancorp shares were not necessarily then available for sale. If no shares were available, Gill & Associates would put the interested person's name on a list and contact that person when shares became available. On six to eight occasions during the 10-year period from 1984 through 1994, when Bancorp shares became available for sale, Gill & Associates would place an advertisement, for a brief period, in the local newspaper. Gill & Associates charged a fee of 25 cents for each share placed, and acted as placement agent as an accommodation to the bank, to encourage its business relationship with the bank.

On December 1, 1994, eight individuals, including petitioner, owned or controlled 50.5 percent of the issued and outstanding shares of Bancorp. Petitioner owned or controlled 7 percent of those shares.

Respondent's Adjustments

In determining the deficiencies here in question, respondent disallowed all of the deductions claimed by petitioners on account of the transfer except for $33,338 (petitioner's cost basis in the shares), which respondent allowed for 1994. Respondent explained his disallowance on the basis that petitioners had failed to establish that any of the amounts disallowed met the requirements of section 170, which allows a deduction for charitable contributions.

OPINION

I.  Introduction

On December 27, 1994 (the transfer date), petitioner transferred 6,350 shares of Bancorp (the shares) to the foundation, claiming charitable contribution deductions on account thereof on petitioners' 1994 through 1997 income tax returns.  Respondent disallowed all those deductions except that he allowed a charitable contribution deduction equal to petitioner's cost basis in the shares, $33,338, for 1994. Petitioners have assigned error to respondent's determination of deficiencies to the extent that respondent disallowed petitioners' claimed charitable deductions (the disallowed deductions).  In support of their assignment of error, petitioners aver:  "Pursuant to I.R.C. §§ 170(a) and 170(e)(5)(A) and (B), Petitioners properly took the charitable deduction to

the Foundation in an amount equal to the fair market value of the Bank stock in the amount of $553,847." Respondent denies that averment and, on brief, argues that petitioners are not entitled to the disallowed deductions because the shares were not "qualified appreciated stock", as that term is defined in section 170(e)(5)(B). Alternatively, respondent argues that petitioners are entitled to no deduction on account of the transfer of the shares to the foundation because petitioners failed to comply with regulations requiring the substantiation of claimed charitable contributions. Respondent does not, however, ask for any increased deficiency in connection with his alternative argument (he has allowed a deduction of $33,338 for 1994).

We agree with respondent that the shares were not qualified appreciated stock. We also agree with respondent that petitioners did not substantiate the transfer as required by regulations. Therefore, petitioners are not entitled to the disallowed deductions. After setting forth the relevant provisions of the Code and the regulations, we will discuss our reasons for agreeing with respondent.

II. Code and Regulations

A. Code

In pertinent part, section 170(a)(1) provides:

SEC. 170.  CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a)  Allowance of Deduction.--

(1) General rule.--There shall be allowed as a deduction any charitable contribution * * * payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

In pertinent part, section 170(e) provides:

SEC. 170(e).  Certain Contributions of Ordinary Income and Capital Gain Property.--

(1)  General rule.--The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of--

*     *     *     *     *     *     *

(B) in the case of a charitable contribution--

*     *     *     *     *     *     *

(ii) to or for the use of a private foundation (as defined in section 509(a)), other than a private foundation described in subsection (b)(1)(E),

the amount of gain which would been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution).

*     *     *     *     *     *     *

(5)  Special rule for contributions of stock for which market quotations are readily available.--

(A) In general.--Subparagraph (B)(ii) of paragraph (1) shall not apply to any ontribution of qualified appreciated stock.

(B) Qualified appreciated stock.--* * * for purposes of this paragraph, the term "qualified appreciated stock" means any stock of a corporation--

(i) for which (as of the date of the contribution) market quotations are readily available on an established securities market, and

(ii) which is capital gain property (as defined in subsection (b)(1)(C)(iv)).

B. Regulations

Section 1.170A-13, Income Tax Regs., sets forth record keeping and return requirements for deductions for charitable contributions.  Paragraph (c) thereof applies to charitable contributions made after December 31, 1984, by, among others, an individual of an item of property "other than money and publicly traded securities to which § 1.170A-13(c)(7)(xi)(B) does not apply" if the amount claimed or reported as a deduction with respect to the property exceeds $5,000.  Paragraph (c) further provides:  "No deduction under section 170 shall be allowed with respect to a charitable contribution to which this paragraph applies unless the substantiation requirements described in paragraph (c)(2) of this section are met."  In pertinent part, section 1.170A-13(c)(2)(i), Income Tax Regs., provides:

(2) Substantiation requirements.  (i) In general. * * * a donor who claims or reports a deduction with respect to a charitable contribution to which this paragraph (c) applies must comply with the following three requirements:

(A) Obtain a qualified appraisal (as defined in paragraph (c)(3) of this section) for such property contributed.  If the contributed property is a partial interest, the appraisal shall be of the partial interest.

(B) Attach a fully completed appraisal summary (as defined in paragraph (c)(4) of this section) to the tax return * * * on which the deduction for the contribution is first claimed (or reported) by the donor.

(C) Maintain records containing the information required by paragraph (b)(2)(ii) of this section.

Among the requirements set forth in section 1.170A-13(c)(3), Income Tax Regs., for a qualified appraisal are that it be made not earlier than 60 days prior to the date of the contribution, be prepared, signed and dated by a qualified appraiser, contain the qualifications of the qualified appraiser, contain a statement that it was prepared for income tax purposes, show the date on which the property was appraised, show the fair market value of the property on the date of contribution, and show the method of valuation and the specific basis for the valuation.

Among the requirements set forth in section 1.170A-13(c)(4), Income Tax Regs., for an appraisal summary are that it be signed and dated by the donee and the appraiser on a form prescribed by the Internal Revenue Service and that it contain certain information.  The information required includes a description of the property, the manner and date of the property's acquisition by the donor, the date of the receipt of the property by the donee, the donor's cost for the property and the appraised fair

market value of the property on the date of contribution, information identifying the donor and donee, information identifying the qualified appraiser signing the appraisal summary, and a prescribed appraiser declaration.

Among the records retention requirements set forth in section 1.170A-13(b)(2)(ii), Income Tax Regs., is that, if the value of the contributed property was determined by appraisal, a copy of the signed appraisal report be retained.

The term "publicly traded securities" is defined for purposes of section 1.170A-13(c), Income Tax Regs., in subparagraph (7)(xi) thereof. In pertinent part, that definition is as follows:

> (xi) Publicly traded securities. (A) In general. * * * the term "publicly traded securities" means securities * * * for which (as of the date of the contribution) market quotations are readily available on an established securities market. For purposes of this section, market quotations are readily available on an established securities market with respect to a security if:
>
> (1) The security is listed on the New York Stock Exchange, the American Stock Exchange, or any city or regional exchange in which quotations are published on a daily basis, including foreign securities listed on a recognized foreign, national, or regional exchange in which quotations are published on a daily basis;
>
> (2) The security is regularly traded in the national or regional over-the-counter market, for which published quotations are available; or
>
> (3) The security is a share of an open-end investment company (commonly known as a mutual fund) registered under the Investment Company Act of 1940, as amended (15 U.S.C. 80a-1 to 80b-2), for which

quotations are published on a daily basis in a
newspaper of general circulation throughout the United
States.

(If the market value of an issue of a security is
reflected only on an interdealer quotation system, the
issue shall not be considered to be publicly traded
unless the special rule described in paragraph
(c)(7)(xi)(B) of this section is satisfied.)

III.  Discussion

A.  Introduction

Petitioners are not entitled to the disallowed deductions if

the shares were not, on the transfer date, "qualified appreciated

stock" (qualified appreciated stock), within the meaning of

section 170(e)(5)(B).  If the shares were not qualified

appreciated stock, then, because there is no dispute that the

shares were contributed to a private foundation (other than a

private foundation described in section 170(b)(1)(E)),

petitioners' deduction on account of the transfer cannot exceed

$33,338.[1]  Alternatively, petitioners are not entitled to the

disallowed deductions if they are subject to, and failed to

satisfy, the substantiation requirements set forth in section

1.170A-13(c)(2)(i), Income Tax Regs. (the substantiation

requirements).[2]

---

[1]  There is no dispute that the shares were capital assets
in petitioner's hands and that his adjusted basis in the shares
was $33,338.

[2]  Pursuant to sec. 1.170A-13(c)(1)(i), Income Tax Regs., if
the substantiation requirements are not satisfied (and a
(continued...)

There is a common denominator for determining whether the shares were qualified appreciated stock on the transfer date and whether petitioners are subject to the substantiation requirements. That common denominator is whether, on the transfer date, market quotations with respect to the shares were readily available on an established securities market. See sec. 170(e)(5)(B)(i); sec. 1.170A-13(c)(7)(xi)(A), Income Tax Regs.[3] Because we find that, on the transfer date, market quotations with respect to the shares were not readily available on an established securities market, (1) the shares were not qualified appreciated stock, (2) petitioners are subject to the substantiation requirements (which they failed to satisfy), and (3) as a result of either (1) or (2), or both, they are not entitled to the disallowed deductions.

---

[2](...continued)
deduction in excess of $5,000 is claimed), no deduction is allowable. Respondent has, however, in effect, allowed a deduction of $33,338 for 1994. See supra, Respondent's Adjustments. We have accepted such a concession in the past. Hewitt v. Commissioner, 109 T.C. 258, 266 (1997), affd. without published opinion 166 F.3d 332 (4th Cir. 1998).

[3] The substantiation requirements apply unless, on the transfer date, the shares were "publicly traded securities to which § 1.170A-13(c)(7)(xi)(B) does not apply". See sec. 1.170A-13(c)(1)(i), Income Tax Regs. That condition is met only if, on the transfer date, with respect to the shares, market quotations were readily available on an established securities market, without application of the special rule found in subdiv. (B) of sec. 1.170A-13(c)(7)(xi), Income Tax Regs., and subject to the exception set forth in subdiv. (C) thereof. See sec. 1.170A-13(c)(7)(xi)(A), Income Tax Regs.

B.  Disagreement

The disagreement between the parties is over the meaning of the requirement (sometimes, the market quotations requirement) that "market quotations * * * [be] readily available on an established securities market".  Petitioners argue for a "plain language" reading of the requirement.  They rely on the testimony of their expert witness, Eugene N. White, Ph.D., who was accepted by the Court as an expert in banking and securities markets, and who was of the opinion that Bancorp stock was traded on the OTC market, which is an established part of the securities market, so that Bancorp stock "qualifies as a security that was traded on an established securities market".  Petitioners argue that, on the transfer date, market quotations were readily available for the shares since, on that date, if requested, Gill & Associates could have readily determined the book value of the bank's assets, which it believed to be a fair value for Bancorp's stock.

Respondent argues that the market quotations requirement was not satisfied because, on the transfer date:  (1) Bancorp shares did not trade on, and therefore, did not have market quotations on, an established securities market, and (2) even if Bancorp shares did so trade, market quotations with respect to those shares were not readily available.  With respect to whether the shares constituted qualified appreciated stock, respondent summarizes his argument as follows:

The evidence adduced at trial reveals that Bancorp stock was traded by a single broker; stock quotations could be obtained only from that broker; during a ten-year period, the broker advertised the Bancorp stock only six or eight times, in a newspaper of local circulation; and only the issuer of the stock maintained records of sales transactions. In view of these facts, treating the Bancorp stock as qualified appreciated stock would not be consistent with the expressed intention of Congress to limit the exception for qualified appreciated stock to "certain situations in which the potential for abuse, including overvaluation, is minimized." * * *

Respondent points out that petitioners concede that the shares were not part of an issue of securities that satisfied any of the circumstances described in section 1.170A-13(c)(7)(xi)(A), Income Tax Regs.

C. Discussion

1. Tax Reform Act of 1984

We begin with an examination of two sections of the Tax Reform Act of 1984 (Tax Reform Act of 1984 or TRA), Division A of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494. The first section is TRA section 155, 98 Stat. 691, which gives rise to the substantiation requirements and, in subsection (a)(6)(C), defines the term "publicly traded securities" to mean "securities for which (as of the date of the contribution) market quotations are readily available on an established securities market".[4] The second section is TRA section 301(b), 98 Stat.

---

[4] While TRA sec. 155 gives rise to the substantiation requirements, it does not impose them, but directs the Secretary
(continued...)

778, which adds to the Internal Revenue Code section 170(e)(5), which contains the term "qualified appreciated stock" and, in pertinent part, defines that term as "any stock of a corporation for which (as of the date of the contribution) market quotations are readily available on an established securities market".

The legislative history of both TRA provisions informs us that, with respect to each, Congress's purpose was to combat inflated deductions resulting from the overvaluation of property contributed to charities. In Hewitt v. Commissioner, 109 T.C. 258, 261-262, 265 (1997), affd. without published opinion 166 F.3d 332 (4th Cir. 1998), we reviewed the history of TRA section 155 and stated:

> [I]t is clear that the principal objective of * * *
> [TRA] section 155 was to provide a mechanism whereby
> respondent would obtain sufficient return information
> in support of the claimed valuation of charitable
> contributions of property to enable respondent to deal
> more effectively with the prevalent use of
> overvaluations.

H.R. 4170, 98th Cong., 2d Sess. (1984), is the bill that, when enacted, included the Tax Reform Act of 1984. H. Rept. 98-432 (Part 2) (1984) is the supplemental report of the Committee on Ways and Means on H.R. 4170. With respect to the reason for adding section 170(e)(5) to the Internal Revenue Code, the report

---

⁴(...continued)
to prescribe the requirements by regulation. TRA sec. 155(a)(1); see Hewitt v. Commissioner, supra at 261-262. Sec. 1.170A-13(c), Income Tax Regs., contains that prescription.

states the Committee on Ways and Means' belief:  "[T]hat deductibility at full fair market value for gifts of appreciated stock to private nonoperating foundations should be permitted in certain situations in which the potential for abuse, including overvaluations, is minimized."  Id. at 1464.

The rebuttable presumption of formal consistency is a presumption applicable in the interpretation of statutes.  The presumption is that, when the drafter of a legal document uses the same language in more than one portion of the same document, a court may presume a consistency of meaning.  See Dickerson, The Interpretation and Application of Statutes 224 (1975).  Congress used the same language to express the market quotations requirement in TRA sections 155 and 301.  Nothing here leads us to believe that Congress intended inconsistent meanings, and the commonality of legislative purpose leads us to believe that a consistent meaning was intended.  We conclude that the market quotations requirement has the same meaning for the purpose of defining qualified appreciated stock and in determining when securities are publicly traded (so as to exempt a donor from the substantiation requirements).

2.  Market Quotations Requirement

In general, if a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution.

Sec. 1.170A-1(c)(1), Income Tax Regs.  Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.  Sec. 1.170A-1(c)(2), Income Tax Regs.  The fair market value of a share of stock or a security is not necessarily equal to its market quotation.  See sec. 1.170A-13(c)(7)(xi)(D), Income Tax Regs.  Nevertheless, we assume that Congress believed that the existence of readily available market quotations would substantially assist in, if not determine, fair market valuation (and discourage overvaluation).  We do not agree with petitioners that the market quotations requirement was met because Bancorp shares were occasionally traded by Gill & Associates, who could provide a suggested share price based on the net asset value of the bank.  Such share price did not necessarily reflect a price that any willing buyer or seller had accepted or would accept. Gill & Associates charged a flat fee of 25 cents for each share traded, and acted as a placement agent as an accommodation to the bank, to encourage its business relationship with the bank.  We do not accept Gill & Associates' procedures for quoting prices as a reliable proxy for fair market valuation.  The intendment of the market quotations requirement would not be served by accepting procedures such as those followed by Gill & Associates with respect to Bancorp shares as satisfying the requirement.

### 3. Section 1.170A-13(c)(7)(xi)(A), Income Tax Regs.

Section 1.170A-13(c)(7)(xi)(A), Income Tax Regs., describes circumstances in which the market quotations requirement is met for purposes of exempting contributions of certain publicly traded securities from the substantiation requirements. See sec. 1.170A-13(c)(1)(i), Income Tax Regs. Section 1.170A-13(c)(7)(xi)(A), Income Tax Regs., does not purport to be applicable to the interpretation of the term "qualified appreciated stock". Nevertheless, given our conclusion as to the consistent meaning of the market quotations requirement, we believe that section 1.170A-13(c)(7)(xi)(A), Income Tax Regs., also describes circumstances in which the market quotations requirement is met for the purpose of determining whether the shares constituted qualified appreciated stock.[5]

In the petition, petitioners aver that the market quotations requirement was satisfied by virtue of the Bancorp shares' satisfying either subdivision (1) or (2) of section 1.170A-13(c)(7)(xi)(A), Income Tax Regs. During the trial of this case, however, petitioners conceded that, on the transfer date, the Bancorp shares did not satisfy any of the subdivisions of section

---

[5] We need not be concerned with the special rule provided in sec. 1.170A-13(c)(7)(xi)(B), Income Tax Regs., which applies, among other conditions, only if the issue of a security in question is regularly traded in a market that is reflected by the existence of an interdealer quotations system for the issue. That condition was not here met. See sec. 1.170A-13(c)(7)(xi)(B)(2)(ii), Income Tax Regs.

1.170A-13(c)(7)(xi)(A), Income Tax Regs. Petitioners rely on their plain language reading of the market quotations requirement and argue that the regulation is invalid because inconsistent with that reading. Since we reject petitioners' plain language reading, we reject petitioners' argument based on that reading, that the regulation is invalid.

Petitioners have failed to satisfy the market quotations requirement for purposes of determining whether the shares were (1) publicly traded so as to be exempt from the substantiation requirements and (2) qualified appreciated stock.

### 4. Substantiation Requirements

Petitioners have failed to show that they complied with the three substantiation requirements specified in section 1.170A-13(c)(1), Income Tax Regs. First, there is no evidence that they met the requirements specified in section 1.170A-13(c)(3), Income Tax Regs., for a qualified appraisal. Second, no appraisal summary is attached to the Form 8283 submitted with the Form 1040, as required by section 1.170A-13(c)(2)(B), Income Tax Regs. Third, there is no evidence that they maintained records containing the information required by section 1.170A-13(b)(2)(ii), Income Tax Regs.

We find that petitioners failed to meet the substantiation requirements. Accordingly, except with respect to the $33,338 respondent allowed for 1994, no charitable deductions are allowed

to them on account of the transfer of the shares to the foundation.  See sec. 1.170A-13(c)(1)(i), Income Tax Regs.

### 5.  Qualified Appreciated Stock

Since the shares were not qualified appreciated stock, petitioners' deduction on account of the transfer is, for a second reason, limited to $33,338.

## IV.  Conclusion

Respondent has prevailed on the only issue for decision. Petitioners are not entitled to the disallowed deductions.

Decision will be entered

for respondent.