T.C. Memo. 2020-105

UNITED STATES TAX COURT

ENGLEWOOD PLACE, LLC, EFFINGHAM MANAGERS, LLC,
TAX MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1560-18.                         Filed July 9, 2020.

<u>Anson H. Asbury</u>, <u>Ethan J. Vernon</u>, and <u>Gilbert L. Carey, Jr.</u>, for petitioner.

<u>Christopher D. Bradley</u>, <u>Jason P. Oppenheim</u>, <u>John W. Sheffield III</u>, and <u>John T. Arthur</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This is one of many cases in this Court involving charitable contribution deductions for conservation easements.  Currently before the Court are cross-motions for partial summary judgment filed by the Internal Reve-

[*2] nue Service (IRS or respondent) and by petitioner. The questions presented by these motions are substantially identical to those decided adversely to the taxpayers in PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193 (5th Cir. 2018); Oakbrook Land Holdings, LLC v. Commissioner, 154 T.C. __ (May 12, 2020); Coal Prop. Holdings, LLC v. Commissioner, 153 T.C. 126 (2019); Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24; and Belair Woods, LLC v. Commissioner, T.C. Memo. 2018-159. Following the analyses in those opinions we will grant respondent's motion and deny petitioner's cross-motion.

## Background

There is no dispute as to the following facts, which are drawn from the petition, the parties' motion papers, and the attached declarations and exhibits. Englewood Place, LLC (Englewood), is a Georgia limited liability company (LLC) that has operated at all times as a partnership for Federal income tax purposes. Englewood had its principal place of business in Georgia when its petition was filed.

In December 2008 Englewood acquired, by contribution from HRH Investments, LLC (HRH), a 135-acre tract of land in Effingham County, Georgia. On July 29, 2011, Englewood donated a conservation easement over 130 acres of that tract to the Georgia Land Trust (GLT or grantee), a "qualified organization" for

[*3] purposes of section 170(h)(3).[1]  We will refer to this 130-acre tract as the conserved area or the Property.  The deed of easement was recorded the same day.[2]

The easement deed recites the conservation purposes and generally prohibits commercial or residential development.  But it reserves certain rights to Englewood as grantor, including the rights to conduct commercial agricultural and timber-harvesting activities within the conserved area.  Englewood also reserved the right to construct within the conserved area "a limited number of improvements and buildings."  These improvements could include the development of "woods roads" for permitted agricultural and forestry activities, construction of agricultural buildings (including barns and sheds) covering up to 50% of a designated one-acre plot, maintenance of existing roads, and the construction of a

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round monetary amounts to the nearest dollar.

[2]HRH or its affiliates contributed other tracts of land in Effingham County to other LLCs, and Effingham Managers, LLC, petitioner in this case, served as tax matters partner for most of these LLCs.  Each LLC granted a conservation easement to GLT.  The IRS has challenged the charitable contribution deductions claimed by the LLCs for those other donations.  See Maple Landing, LLC v. Commissioner, T.C. Memo. 2020-104; Riverside Place, LLC v. Commissioner, T.C. Memo. 2020-103; Village at Effingham, LLC v. Commissioner, T.C. Memo. 2020-102; Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24; Belair Woods, LLC v. Commissioner, T.C. Memo. 2018-159; Red Oak Estates, LLC v. Commissioner, T.C. Dkt. No. 13659-17; Cottonwood Place, LLC v. Commissioner, T.C. Dkt. No. 14076-17.

[*4] residential driveway and utilities (including water, septic, and power lines) to serve an adjacent five-acre residential parcel owned by Englewood.

The deed recognizes the possibility that the easement might be extinguished at some future date.  In the event the Property were sold following judicial extinguishment of the easement, paragraph 17 of the deed provided that "[t]he amount of the proceeds to which Grantee shall be entitled, <u>after the satisfaction of any and all prior claims</u>, shall be determined, unless otherwise provided by Georgia law at the time, in accordance with the Proceeds paragraph."  (Neither party contends that Georgia law "otherwise provide[s].")  Paragraph 19, captioned "Proceeds," specified that the grantee's share of any future proceeds would be determined

> by multiplying the fair market value of the Property unencumbered by this Conservation Easement (<u>minus any increase in value after the date of this Conservation Easement attributable to improvements</u>) by the ratio of the value of the Conservation Easement at the time of this conveyance to the value of the Property at the time of this conveyance without deduction for the value of the Conservation Easement.

Englewood timely filed Form 1065, U.S. Return of Partnership Income, for its taxable year beginning May 19, 2011, and ending December 31, 2011.  On that return it claimed a charitable contribution deduction of $4,773,000 for its donation of the easement.  Englewood relied on an appraisal by David R. Roberts, who used

**[\*5]** the "before and after method" to determine the easement's fair market value (FMV).[3]

Englewood included with its return a Form 8283, Noncash Charitable Contributions, executed by Mr. Roberts and GLT. When a taxpayer donates property (other than publicly traded securities) valued in excess of $5,000, the taxpayer must provide on Form 8283 specified information about the donated property, including the date and method of acquisition and the donor's "cost or adjusted basis." In the relevant boxes on Form 8283 Englewood wrote "see attachment" or "SA" and appended a two-page attachment. The attachment stated that the Property had been "acquired by donor" on December 17, 2008, by "purchase/exchange." With respect to "cost or adjusted basis" Englewood stated:

> A declaration of the taxpayer's basis in the property is not included in
> * * * the attached Form 8283 because of the fact that the basis of the
> property is not taken into consideration when computing the amount
> of the deduction.

---

[3]Petitioner represents that Englewood's cost basis for the 135-acre tract was $245,631. Assuming that to be true, Mr. Roberts' valuation supposed that the Property had appreciated in value by more than 1,900% during one of the worst financial crises to hit the United States since the Great Depression. Mr. Roberts was the original appraiser in numerous other conservation easement cases that this Court has decided. See, e.g., Plateau Holdings, LLC. v. Commissioner, T.C. Memo. 2020-93; Woodland Prop. Holdings, LLC v. Commissioner, T.C. Memo. 2020-55; Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24.

**[\*6]**   The IRS selected Englewood's 2011 return for examination.  On October 24, 2017, the IRS issued Englewood a timely notice of final partnership administrative adjustment (FPAA) disallowing the charitable contribution deduction in full because Englewood had not shown that the requirements of section 170 were met.  The FPAA alternatively determined that, if any deduction were allowable, Englewood had not established that the FMV of the easement exceeded $0.  The FPAA determined a 40% "gross valuation misstatement" penalty under section 6662(h) and (in the alternative) a 20% accuracy-related penalty under other provisions of section 6662(a).

Petitioner timely petitioned this Court for readjustment of the partnership items, see sec. 6226(f), and the parties filed cross-motions for partial summary judgment.  Respondent contends that the charitable contribution deduction was properly disallowed for two independently sufficient reasons.  First, he contends that the conservation purpose underlying the easement is not "protected in perpetuity," see sec. 170(h)(5)(A), because the easement deed fails to comply with the regulations governing judicial extinguishment, see sec. 1.170A-14(g)(6), Income Tax Regs.  Second, he contends that Englewood did not attach to its 2011 return, as the regulations require, a fully completed appraisal summary on Form 8283.  See sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs.  Petitioner contends that

**[\*7]** Englewood complied with all regulatory requirements and (if it did not) that the regulations imposing these requirements are invalid. We have rejected all of petitioner's arguments in cases involving substantially similar deeds of easement, and we do so again here.

Discussion

A.     <u>Summary Judgment Standard</u>

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. <u>See</u> <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Elec. Arts, Inc. v. Commissioner</u>, 118 T.C. 226, 238 (2002). Petitioner has alleged no genuine dispute of material fact affecting the two questions that respondent has proposed for summary adjudication. We conclude that these issues may appropriately be adjudicated summarily.

B.     <u>Judicial Extinguishment</u>

The Code generally restricts a taxpayer's charitable contribution deduction for the donation of "an interest in property which consists of less than the taxpayer's entire interest in such property." Sec. 170(f)(3)(A). But there is an exception

**[\*8]** for a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii), (h)(1). For the donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity." Sec. 170(h)(5)(A).

The regulations set forth detailed rules for determining whether this "protected in perpetuity" requirement is met. Of importance here are the rules governing the mandatory division of proceeds in the event the property is sold following a judicial extinguishment of the easement. See sec. 1.170A-14(g)(6), Income Tax Regs. The regulations recognize that "a subsequent unexpected change in the conditions surrounding the [donated] property * * * can make impossible or impractical the continued use of the property for conservation purposes." Id. subdiv. (i). Despite that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable donee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift. Ibid. In effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee "exclusively for conservation purposes." Sec. 170(h)(5)(A).

**[*9]**  The judicial extinguishment provisions of the deed in this case are substantially similar to those that we considered in Coal Prop. Holdings, 153 T.C. at 130-131.  Following our reasoning in that case, we conclude that Englewood's deed fails to satisfy the "protected in perpetuity" requirement for two reasons.

First, the regulatory fraction used in the deed to determine the grantee's proportionate share of post-extinguishment proceeds is applied, not to the full sale proceeds--an amount presumably equivalent to the FMV of the Property at the time of sale--but to the proceeds "minus any increase in value after the date of this Conservation Easement attributable to improvements."  Thus, the grantee's share is improperly reduced on account of (1) appreciation in the value of improvements existing when the easement was granted plus (2) the FMV of any improvements that the donor or its successors subsequently make to the Property.  By reducing the grantee's share in this way, the deed violates the regulatory requirement that the donee receive, in the event the Property is sold following extinguishment of the easement, a share of proceeds that is "at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift, bears to the value

[*10] of the property as a whole at that time." See sec. 1.170A-14(g)(6)(ii), Income Tax Regs.[4]

As we have noted previously, the requirements of this regulation "are strictly construed." Carroll v. Commissioner, 146 T.C. 196, 212 (2016). Because the grantee in this case "is not absolutely entitled to a proportionate share of * * * [the] proceeds" upon a post-extinguishment sale of the Property, the conservation purpose underlying the contribution is not "protected in perpetuity." Coal Prop. Holdings, 153 T.C. at 127, 139 (quoting Carroll, 146 T.C. at 212); accord, Plateau Holdings, LLC v. Commissioner, T.C. Memo. 2020-93; Oakbrook Land Holdings, LLC v. Commissioner, T.C. Memo. 2020-54. The U.S. Court of Appeals for the Fifth Circuit has likewise sustained the disallowance of a charitable contribution deduction where the judicial extinguishment provision of an easement deed included a carve-out for donor improvements similar to that here. See PBBM-Rose Hill, 900 F.3d at 208.

---

[4]The pre-contribution improvements to the conserved area in this case appear to be less substantial than in Coal Prop. Holdings, LLC v. Commissioner, 153 T.C. 126, 131 (2019). But the deed reserved to Englewood the right to make post-contribution improvements to the conserved area, including the rights (for example) to construct barns, sheds, roads, a residential driveway, and utilities (including water, septic, and power lines) to serve the conservation area and/or Englewood's adjacent residential parcel. These factual differences have little impact on our analysis because the regulation does not permit any reduction of the donee's share on account of such donor improvements.

**[*11]** The easement deed here has a second problem, which was also present in Coal Prop. Holdings. The grantee's tentative share of the proceeds, as determined under paragraph 19 of the deed, is adjusted further by paragraph 17. It provides that the grantee's share will be determined under the Proceeds paragraph, but only "after the satisfaction of any and all prior claims." Prior claims against the sale proceeds might be held by various creditors of Englewood or its successors.

It is not necessarily unreasonable for a deed to provide that prior claims may be paid from sale proceeds. What is unreasonable is the requirement that all prior claims be paid out of the grantee's share of the proceeds, even if those claims represent liabilities of Englewood or its successors. See Coal Prop. Holdings, 153 T.C. at 145 n.5. Because the grantee's share of the proceeds is improperly reduced by carve-outs both for donor improvements and for claims against the donor, the deed's judicial extinguishment provisions do not satisfy the regulatory require-ments.

If the regulation is interpreted, as we have interpreted it, to make Engle-wood ineligible for a charitable contribution deduction, Englewood contends that the regulation is invalid. It urges that section 1.170A-14(g)(6), Income Tax Regs., is an "arbitrary and capricious" rule promulgated in violation of the Administra-tive Procedure Act. And it contends that the regulation is substantively invalid

**[\*12]** under the test set forth in <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). We comprehensively addressed and rejected both of these arguments in a recent Court-reviewed Opinion. <u>See</u> <u>Oakbrook Land Holdings</u>, 154 T.C. at __ (slip op. at 15-33). We need not repeat that analysis here.

In sum, we hold that the conservation purpose underlying the easement was not "protected in perpetuity" as required by section 170(h)(5)(A). For that reason the charitable contribution deduction claimed by Englewood must be denied in its entirety. <u>See</u> <u>Coal Prop. Holdings</u>, 153 T.C. at 139. We will therefore grant respondent's motion for partial summary judgment on his first theory.[5]

---

[5]Petitioner draws our attention to Priv. Ltr. Rul. 200836014 (Sept. 5, 2008) (PLR), in which the IRS found unobjectionable an easement deed with a judicial extinguishment clause resembling that here. Petitioner contends that respondent's interpretation of the regulation as set forth in that PLR is binding on respondent under <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997). Petitioner's argument ignores the fact that determinations embodied in a PLR "may not be used or cited as precedent." Sec. 6110(k)(3). The taxpayer in <u>PBBM-Rose Hill</u> brought the same PLR to the Court of Appeals' attention, but that court paid no heed to it, finding the regulation unambiguous on its face. <u>See</u> <u>PBBM-Rose Hill, Ltd. v. Commissioner</u>, 900 F.3d 195, 207-208 (5th Cir. 2018). We have done the same. <u>See</u> <u>Coal Prop. Holdings</u>, 153 T.C. at 144. In <u>Oakbrook Land Holdings, LLC v. Commissioner</u>, T.C. Memo. 2020-54, we dismissed reliance on <u>Auer</u> deference because "the 'traditional tools of construction' le[d] us to hold that the Commissioner's construction of the regulation is correct even if we look at the question <u>de novo</u>." <u>Id.</u> at \*25 (quoting <u>Kisor v. Wilkie</u>, 588 U.S. __, __, 139 S. Ct. 2400, 2415 (2019)).

**[*13]** C.    <u>Appraisal Summary</u>

Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must "obtain[] a qualified appraisal of such property and attach[] to the return * * * such information regarding such property and such appraisal as the Secretary may require."  Sec. 170(f)(11)(C). The required information includes "an appraisal summary" that must be attached "to the return on which such deduction is first claimed for such contribution." Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, sec. 155(a)(1)(B), 98 Stat. at 691; <u>see</u> sec. 1.170A-13(c)(2), Income Tax Regs.  The IRS has pre-scribed Form 8283 to be used as the "appraisal summary."  <u>Jorgenson v. Commissioner</u>, T.C. Memo. 2000-38, 79 T.C.M. (CCH) 1444, 1450.  Failure to comply with this requirement generally precludes a deduction.  <u>See</u> sec. 170(f)(11)(A) (providing that "no deduction shall be allowed" unless a taxpayer meets the appraisal summary requirements of section 170(f)(11)(C)).

In his response to petitioner's cross-motion, respondent contends that Englewood's deduction should be disallowed because it failed to attach to its re-turn a properly completed appraisal summary.  Petitioner contends that Englewood strictly (or at least substantially) complied with the applicable regulation.  In the alternative it contends that the regulation is invalid.

**[*14]** The regulation requires the donor to "[a]ttach a fully completed appraisal summary" to the tax return on which the charitable contribution deduction is first claimed. Sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. A fully completed appraisal summary must include "[t]he manner of acquisition * * * and the date of acquisition of the [donated] property by the donor" as well as "[t]he cost or other basis of the property." Id. subpara. (4)(ii)(D) and (E). "If a taxpayer has reasonable cause for being unable to provide the information required * * * (relating to the manner of acquisition and basis of the contributed property), an appropriate explanation should be attached to the appraisal summary." Id. subdiv. (iv)(C)(1).

In the relevant boxes on its Form 8283 Englewood wrote "see attachment" and appended a two-page attachment. The attachment said that the Property had been acquired by the donor on December 17, 2008, by "purchase/exchange." Petitioner represents that Englewood actually acquired the 135 acres in December 2008 by contribution from HRH. The attachment said that Englewood would not provide cost basis information "because of the fact that the basis of the property is not taken into consideration when computing the amount of the deduction." The taxpayers in Oakhill Woods, at *7-*8, and Belair Woods, 116 T.C.M. (CCH) at 326-327, had attached the same text, verbatim, to the Forms 8283 enclosed with their returns.

**[\*15]** We hold that Englewood did not report its cost basis information as the regulation requires and as Form 8283 directs. The explanation it attached, far from showing that it was unable to provide this information, simply asserted that the information was not necessary. In effect, Englewood asserted that taxpayers are free to ignore the requirement that they report cost basis. "Asserting that one may ignore a requirement does not constitute strict compliance with it." Oakhill Woods, at \*13; Belair Woods, 116 T.C.M. (CCH) at 327-328.

In Bond v. Commissioner, 100 T.C. 32, 41-42 (1993), we held that some of the reporting requirements in section 1.170A-13, Income Tax Regs., can be satisfied by substantial, rather than by literal, compliance. "The doctrine of substantial compliance is designed to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply." Durden v. Commissioner, T.C. Memo. 2012-140, 103 T.C.M. (CCH) 1762, 1763. Substantial compliance may be shown where the taxpayer "provided most of the information required" or made omissions "solely through inadvertence." Hewitt v. Commissioner, 109 T.C. 258, 265 & n.10 (1997), aff'd without published opinion, 166 F.3d 332 (4th Cir. 1998). But in order to substantially comply, the taxpayer must satisfy all reporting requirements that relate "to the substance or essence of the statute." Bond, 100 T.C. at 41 (quoting Taylor v. Commissioner, 67 T.C. 1071, 1077 (1977)).

**[\*16]** We hold that Englewood did not substantially comply because its failure to supply cost basis violated the essence of the statute. In enacting DEFRA's heightened reporting requirements, Congress aimed to give the IRS tools that would enable it to identify inflated charitable contribution deductions. See RERI Holdings I, LLC v. Commissioner, 149 T.C. 1, 16-17 (2017), aff'd sub nom. Blau v. Commissioner, 924 F.3d 1261 (D.C. Cir. 2019). The requirement to disclose cost basis when that information is reasonably obtainable is necessary to facilitate the Commissioner's efficient identification of overvalued property. Unless the taxpayer complies with the requirement that he disclose his cost basis and the date and manner of acquiring the property, the Commissioner will be deprived of an essential tool that Congress intended him to have. See Oakhill Woods, at \*15-\*22; Belair Woods, 116 T.C.M. (CCH) at 328-330.[6]

---

[6]Petitioner contends that Englewood supplied, elsewhere on its tax return, information from which its cost basis could be derived, e.g., on Schedule L, Balance Sheets per Books. We have rejected that argument previously and reject it again here. See Oakhill Woods, at \*19-\*20; Belair Woods, 116 T.C.M. (CCH) at 329. The regulation requires that "[a]n appraisal summary shall include" information about basis. Sec. 1.170A-13(c)(4)(ii)(E), Income Tax Regs. The explicit disclosure of basis on Form 8283 is essential in alerting the Commissioner as to whether (and to what extent) further investigation may be needed. Where the taxpayer states on Form 8283 (as Englewood did) that basis information will not be provided, revenue agents cannot be required to sift through hundreds of pages of complex returns looking for possible clues about what the taxpayer's cost basis might be.

[*17] Nor is this a case where the taxpayer did "all that is reasonably possible," Durden, 103 T.C.M. (CCH) at 1763, or omitted information "solely through inadvertence," Hewitt, 109 T.C. at 265 n.10.  Englewood explicitly declined to report its cost basis information, asserting that this information was unnecessary because "basis * * * is not taken into consideration when computing the amount of the deduction."  This was not an instance of inadvertent omission but of a conscious election not to supply information damaging to its position.[7]

Finally, petitioner in its cross-motion contends that the regulation requiring disclosure of "cost or other basis" on the appraisal summary is invalid.  According to petitioner, this regulation does not "give effect to the unambiguously expressed intent of Congress" and is thus invalid under Chevron, U.S.A., Inc., 467 U.S. at 842-843.  The taxpayer in Oakhill Woods, at *22-*27, made precisely the same argument and we rejected it.  We do so again here.

For these reasons we hold that Englewood did not comply, strictly or substantially, with the regulatory reporting requirements.  Accord, Oakhill Woods, at *21-*22; Loube v. Commissioner, T.C. Memo. 2020-3, at *15-*23; Belair

---

[7]Given our disposition, we need not decide whether Englewood provided inaccurate information concerning "[t]he manner of acquisition * * * and the date of acquisition of the property by the donor," sec. 1.170A-13(c)(4)(ii)(D), Income Tax Regs., or (if it did) whether that failure would have supplied sufficient grounds, standing alone, for disallowance of the charitable contribution deduction.

**[*18]** <u>Woods</u>, 116 T.C.M. (CCH) at 329-330.  This failure supplied an independent ground for denial of its charitable contribution deduction.[8]

To reflect the foregoing,

<u>An order will be issued granting respondent's motion for partial summary judgment and denying petitioner's cross-motion</u>.

---

[8]Section 170(f)(11)(A)(ii)(II) provides that a charitable contribution deduction may be allowed, notwithstanding the taxpayer's failure to comply with the appraisal summary requirements, "if it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect."  Petitioner has not advanced a "reasonable cause" defense under this provision and has adduced no facts that would be relevant in determining its availability.